THE STATE OF NEVADA, UPON THE RELATION OF LEVON G. KASSABIAN, RELATOR, v. BOARD OF MEDICAL EXAMINERS OF THE STATE OF NEVADA, AND G. H. ROSS, ITS SECRETARY, RESPONDENTS.

No. 3667

September 7, 1951.                    235 P.2d 327.

*Ralli, Rudiak & Horsey,* of Las Vegas, and *Joseph P. Haller,* of Reno, for Relator.

*John R. Ross,* of Carson City, and *Leslie E. Riggins,* of Reno, for Respondents.

## OPINION

By the Court, MERRILL, J.:

This is an original proceeding in prohibition challenging jurisdiction of the Board of Medical Examiners of the State of Nevada to proceed to revoke relator's license to practice medicine and surgery.

Relator is a physician and surgeon licensed to practice and practicing in the State of Nevada since 1922. Respondents constitute a state board appointed by the governor pursuant to statute, the members being "reputable practicing physicians, who have in a regular manner obtained the degree of doctor of medicine from some legally chartered medical institution in the United States or Canada and who shall have been actually engaged in

the practice of medicine in the State of Nevada." (Sec. 4107.02, N.C.L.1929, Supp. 1943–1949.)

On November 16, 1950 relator after jury trial was convicted of the felony of criminal abortion and was sentenced to serve from one to five years in the state penitentiary as a consequence. An appeal was taken from said judgment which appeal is now pending before this court.

On January 11, 1951 a complaint was filed before respondent board charging relator with unprofessional conduct as defined in the medical practice act "in that he * * * did procure and/or abet in procuring a criminal abortion, in the manner following: * * *." The complaint then sets forth the facts of the alleged criminal act of which relator had been found guilty in the criminal action. Written notice of the charges and of the hearing thereon was duly served on relator. An answer was filed by him denying the acts of abortion, admitting that he had treated said patient but alleging that she was not then pregnant and had been treated for venereal disease, cervicitis, Bartholinitis and retroflexion of the uterus.

Section 15 of the medical practice act, being sec. 4107.15, N.C.L.1929, Supp. 1943–1949, specifically defines the term "unprofessional conduct." Included within that definition are the following:

"Procuring, or aiding or abetting in procuring, criminal abortion";

"Conviction of any offense involving moral turpitude, or the conviction of a felony. The record of the conviction shall be conclusive evidence of unprofessional conduct."

Section 16 of the act, being sec. 4107.16, N.C.L.1929, Supp. 1943–1949, provides procedure for hearings before the Board of Medical Examiners upon charges of unprofessional conduct. The section provides for filing of a sworn complaint, the serving of written notice of the charges upon the accused at least twenty days before the date fixed for hearing, and further provides:

"* * * The person charged shall be given a full and fair trial by the board, with the right to be heard and appear in person and by counsel and to present witnesses. The secretary or president of the board shall have power to issue subpenas for the attendance of witnesses. The secretary or president shall also have the power to administer the oath to all witnesses at such hearing. If, after hearing the said charges it appears to the satisfaction of the board that the person is guilty as charged, the board shall revoke the certificate of such person either permanently or temporarily, and by its order suspend the said person from the practice of medicine within this state either permanently or temporarily in the discretion of said board. The board may likewise after finding the person guilty as charged place him on probation. The secretary of the board in all cases of revocation or suspension or probation shall enter in his records the fact of such revocation or suspension or probation and shall within five days notify the county recorder of the county in which the person's certificate has been recorded. In all cases where a certificate is revoked or suspended or a person placed on probation a transcript of the proceedings before the board, and the findings and order of said board, shall be filed within thirty days with the clerk of the district court of the county in which the certificate to practice has been recorded; and any person whose certificate has been revoked or suspended or who has been placed on probation may, within sixty days after filing of said certified copies of said transcript, findings and order, petition said district court to review the said proceedings, findings and order of said board and to reverse or modify the same, and upon such review the burden shall be upon the petitioner to show wherein such order of said board is erroneous or unlawful. When sixty days shall have elapsed after the filing of said order and findings, if no petition for review has been filed, the judge of the district court shall make its order affirming the

decision of the board. Until the same is modified or reversed, as herein provided, the revocation or suspension or probation of such certificate and the right to practice thereunder shall be and become effective on the date the said secretary certifies such fact of the decision and order of the board to the county recorder of the county in which the person's certificate has been recorded."

On April 2, 1951 the hearing commenced before the board. On April 4, 1951 the board handed down its decision and order as follows:

"The Board has carefully considered all of the proof presented in this particular hearing. It is the unanimous decision of the Board that the evidence produced is sufficient to sustain the charges made in the Complaint. It is therefore the decision and judgment of the Board of Medical Examiners of the State of Nevada that Levon G. Kassabian be, and he is hereby, found and adjudged to be guilty of the unprofessional conduct as defined by Section 15 of Chapter 169 of the 1949 Statutes of Nevada, being Section 15 of the Medical Practice Act.

"It is further order of the Board that, by reason of the said Levon G. Kassabian being found guilty of the charges of unprofessional conduct as made against him in the Complaint on file herein, the medical license heretofore granted to Levon G. Kassabian by the Board of Medical Examiners of the State of Nevada be, and it is hereby, revoked."

Relator thereupon applied to this court for writ of prohibition.

On April 16, 1951 an alternative writ was issued prohibiting respondents from certifying the board's decision and order to the recorder of Clark County and from enforcement thereof until further order of this court. It now appears that the decision and order of the board was certified to the county recorder prior to service of the alternative writ.

The first question for our consideration is as to the propriety of prohibition upon these facts. It is apparent that that writ cannot lie. The respondent board has fully discharged its functions in the matter and there are no judicial acts remaining unperformed which this court by prohibition could restrain. All that remains is the ministerial act of enforcement. State ex rel. Scrugham v. Sixth Judicial District Court, 43 Nev. 320, 184 P. 1023.

Under these circumstances the courts of California have adopted a view with which we are in accord. Where the record before the court presents a case for consideration as under a writ of certiorari, there is no reason why the court should not give such relief as the record warrants notwithstanding the petitioner, in seeking prohibition, has sought the wrong relief. Van Hoosear v. Railroad Commission, 189 Cal. 228, 207 P. 903; Traffic Truck Sales Co. v. Justice's Court, 192 Cal. 377, 220 P. 306; Finn v. Butler, 195 Cal. 759, 235 P. 992; A. G. Col Co. v. Superior Court, 196 Cal. 604, 238 P. 926.

We are satisfied that procedurally certiorari would have been the appropriate remedy. The actions of the board were judicial or at least quasi-judicial in character. The statutory remedy of review, considering the statute's provision against supersedeas or stay of execution, is inadequate. Van Heukelom v. Board of Chiropractic Examiners, 67 Nev. 649, 224 P.2d 313. We have before us a complete record of the board's actions and of the evidence upon which it proceeded to act. We shall, accordingly, view this proceeding as one in certiorari and shall upon that basis proceed to review the actions of the board. Instead of confining ourselves to a consideration of whether the board is about to proceed in excess of its jurisdiction, we shall consider whether it has already so proceeded.

Relator first attacks as unconstitutional the final provision of section 16 establishing the effective date of the order of revocation of license. He contends that this provision eliminates all right of supersedeas or stay of execution and that without such right the revocation of license is a taking of property and liberty without due process of law. In support of this contention he cites Porter v. Investors Syndicate, 286 U.S. 461, 52 S.Ct. 617, 76 L.Ed. 1226; affirmed 287 U.S. 346, 53 S.Ct. 132, 77 L.Ed. 354; Pacific Telephone and Telegraph Co. v. Kuykendall, 265 U.S. 196, 44 S.Ct. 553, 68 L.Ed. 975; Oklahoma Natural Gas Co. v. Russell, 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659; Scripps-Howard Radio, Inc. v. Federal Communications Commission, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229; Montana Power Co. v. Public Service Commission, 12 F.Supp. 946.

These decisions dealt respectively with administrative action looking towards protection of the public from fraud and unsafe investments (Blue Sky Laws); protection of the public from imposition of unfair utility rates; protection of the public interest in adequate radio coverage. In each instance the party asserting lack of due process showed clearly that in the absence of supersedeas, irreparable loss of property would result pending appellate action even should such action ultimately prove favorable. In each instance the opposing public interest at most was a monetary one.

Such is not the case before us. We are not here concerned with matters of pecuniary or aesthetic public concern but with matters of public health and safety: matters of police power.

"The power of a state to make reasonable provisions for determining the qualifications of those engaging in the practice ·of medicine, and punishing those who attempt to engage therein in defiance of such statutory provisions, is not open to question." Reetz v. Michigan, 188 U.S. 505, 23 S.Ct. 390, 391, 47 L.Ed. 563, 565.

A comprehensive general statement of the propriety of such regulation is contained in Lawrence v. Board of Registration in Medicine, 239 Mass. 424, 132 N.E. 174, 176, where it is stated:

"The right to follow a legitimate calling for any lawful purpose is sacred and is protected both by the Constitution of the United States and that of this commonwealth. The right of a physician to toil in his profession as well as that of all other citizens to labor in their chosen work is both liberty and property, partaking of the nature of each, and is guaranteed by constitutional mandate from unwarrantable interference. * * * This right with all its sanctity and safeguards is not absolute. It must yield to the paramount right of government to protect the public health by any rational means. No argument is required to demonstrate that legislation reasonably designed to promote the general health of members of society is within the welfare clause of our Constitution, * * *.

"Laws requiring the examination, registration and certification of physicians and prohibiting all others, with exceptions not here material, from practicing medicine have been upheld as not violative of any constitutional provision. * * * Their validity rests upon the proposition that those who undertake to cure the ills, to treat the ailments, to prevent the diseases, and to relieve the suffering of the race may be required to show themselves possessed of technical skill to those ends. Soundness of moral fiber to insure the proper use of medical learning is as essential to the public health as medical learning itself. Mere intellectual power and scientific achievement without uprightness of character may be more harmful than ignorance. Highly trained intelligence combined with disregard of the fundamental virtues is a menace. A physician, however skillful, who is guilty of deceit, malpractice or gross misconduct in the practice of his profession even though not amounting to an offence against the criminal laws, well may

be thought to be pernicious in relation to the health of the community. It is for the Legislature to determine within reasonable limits in the exercise of the police power what the tests shall be for moral character sufficient to enable one to continue in the practice of medicine. The statute in this particular is not open to objection. The circumstance that the petitioner already had been registered and given a certificate to practice medicine gave him no immunity against future legislation of the nature embodied in said chapter 218. He had no vested right to prey upon society by the exercise of deceit, malpractice or gross misconduct in the practice of his profession. His license to practice constituted no contract of that nature. * * *

"The statute affords every reasonable safeguard to protect the rights of the petitioner by requiring a hearing at which he may be present with witnesses and counsel and providing also for hearing in court and revision and reversal of the finding of the board, if justice demands such action. * * *"

To the same effect is Meffert v. State Board of Medical Registration, 66 Kan. 710, 72 P. 247, 1 L.R.A., N.S., 811 (Affirmed 195 U.S. 625, 25 S.Ct. 790, 49 L.Ed. 350).

Relator contends, however, that even in cases such as this, the rule requiring supersedeas maintains. With this view we cannot concur. In Flynn v. Board of Registration in Optometry, 320 Mass. 29, 33, 67 N.E.2d 846, 849, 166 A.L.R. 571, it is stated:

"We recognize that there may be situations where the enforcement of an administrative order may be challenged as denying due process by reason of the fact that no stay is permitted pending a review by the court. See Pacific Telephone & Telegraph Co. v. Kuykendall, 265 U. S. 196, 204–205, 44 S.Ct. 553, 68 L. Ed. 975; Porter v. Investors' Syndicate, 286 U. S. 461, 469, 52 S.Ct. 617, 76 L. Ed. 1226; Scripps-Howard Radio, Inc. v. Federal Communications Commission, 316 U. S. 4, 9–11, 62 S. Ct. 875, 86 L. Ed. 1229; La Verne Co-operative Citrus

Association v. United States, 9 Cir., 143 F. 2d 415, 418–419. But we think that this principle is not applicable to a situation such as that here. We cannot say that it is a deprivation of fundamental rights if the right to a stay is withheld during the interval of time between a decision of the board and the entry of a decree of the court in the event a review is sought. We reach this conclusion the more readily because of the many safeguards in the statute ensuring an adequate hearing in the first instance before the board. The Legislature may have thought that the professions and callings to which this statute was applicable were such that the public health, safety, and welfare might be protected better if a stay were forbidden."

As authority contra the Flynn case, relator cites Moormeister v. Golding, 84 Utah 324, 27 P.2d 447 (a case of revocation of the license of a physician and surgeon), and Francisco v. Dental Examiners, Tex. Civ.App., 149 S.W.2d 619. The pertinent language in the Moormeister case is dicta and is unsupported by cited authority. In the Francisco case the only authorities cited are the federal cases to which we have already referred and which we have distinguished. Further, it is clear in the Francisco case that the court was importantly concerned with the fact that the act there provided for no notice or hearing. In the case at bar, as in the Lawrence and Flynn cases, it may be said that the act affords every reasonable safeguard to protect the rights of the relator. Here, too, we may assume that the legislature felt that public health, safety and welfare might be better protected if a stay were forbidden.

We hold that the lack of stay is not an unconstitutional deprivation of liberty or property without due process of law.

Relator next contends that he was denied a full and fair trial in that while the complaint charged him with unprofessional conduct in performing a specific act of criminal abortion, the trial proceeded on the theory that

petitioner's unprofessional conduct consisted of conviction of a felony.

While that felony consisted of criminal abortion, itself a specified act of unprofessional conduct, this is not sufficient to constitute the two charges identical. The character of proof required to support such charges is not the same. Documentary proof of conviction is in itself sufficient to establish a charge of felony. It is not sufficient to constitute proof of the act of abortion, for this would be tantamount to allowing the board to delegate to a lay jury the vitally important quasi-judicial duties imposed upon it by the act. The propriety of this distinction is rendered the more clear in this case by the fact that the criminal conviction was (and still is) pending on appeal and could not therefore be regarded by the board as final.

This question, then, is a proper one and its determination essential: Was relator tried upon a charge other than the one contained in the complaint and upon which notice of hearing was based? In our view, the record answers this question in the negative.

It is true that counsel for the board in his opening statement and in presentation of his case in chief proceeded upon the theory that the charge was conviction of a felony. Documentary proof of the conviction was presented and counsel thereupon rested his case. Relator, in defense, established that the conviction was pending on appeal and testified in his own behalf in support of his answer to the complaint. In rebuttal, counsel for the board offered in evidence the transcript of testimony taken in the criminal trial, which was received in evidence by the board over relator's objections. Upon submission of the matter to the board there was, therefore (subject to relator's contentions of error and irregularity), evidence in support of the charge of abortion.

Regardless of the theory upon which the board may, erroneously, have commenced its hearing, its ultimate decision and order (which we have already quoted in

full) was based upon "the charges made in the complaint." This, we feel, disposes of the matter.

Relator asserts, however, that the board's apparent departure from the charges set forth in the complaint effected a surprise upon him to the end that he was not able to meet the charges properly and consequently was denied a full and fair trial and due process of law.

The record of the proceedings before the board, however, clearly shows that relator was not misled or prejudiced by such apparent departure. Throughout the presentation of the case against him, his counsel consistently objected to the theory upon which the board apparently was proceeding. · These objections were renewed when that case was rested by counsel for the board. Relator, in presentation of his own case, proceeded upon the theory that the charges against him were not those announced by counsel for the board, but those set forth in the complaint. The apparent departure of the board does not, then, appear to have led him to depart from his original theory or plan of defense. Accordingly we find no merit in this contention.

Relator asserts that the board's decision was uncertain in that it found and adjudged him "guilty of unprofessional conduct as defined by Section 15 of Chapter 169 of the 1949 Statutes of Nevada, being Section 15 of the Medical Practice Act;" that it cannot be ascertained from this language upon which charge the decision was based. We feel that in the balance of the board's decision and order, its specific references to the charges contained in the complaint remove any ambiguity from the quoted portion of the decision.

Relator contends that the transcript of testimony taken at the criminal trial was, upon several grounds, improperly received in evidence. This question, however, cannot properly be considered by us on certiorari.

If error was committed in this respect, it is not such as would affect the jurisdiction of the board. "Whether its action was founded upon strictly legal or sufficient evidence, is not within the province of this court to inquire upon *certiorari.*" State ex rel. Fall v. County Commissioners of Humboldt County, 6 Nev. 100, 103; Hetzel v. County Commissioners of Eureka County, 8 Nev. 359, 362.

The alternative writ of prohibition is dismissed and the action of respondent board affirmed with costs.

BADT, C. J., and EATHER, J., concur.