PETER H. BURLEIGH, APPELLANT, v. STATE BAR OF NEVADA, RESPONDENT.

No. 12989

April 28, 1982            643 P.2d 1201

*Goodman, Oshins, Brown & Singer, Chartered,* and *William B. Terry* and *Martin J. Kravitz,* Las Vegas, for Appellant.

*Ralph B. Peterson,* Reno, for Respondent.

## OPINION

By the Court, ZENOFF, SR. J.:[1]

This case is an automatic appeal, pursuant to SCR 105(3)(b), of a decision by a hearing panel of the State Bar of Nevada, Southern Nevada Disciplinary Board, recommending that Peter H. Burleigh be disbarred, publicly reprimanded, fined and assessed the costs of the disciplinary proceedings against him.

Burleigh contends that his due process rights were violated because respondent had a pecuniary interest in finding grounds for discipline, and that SCR 102(4) impermissibly allowed this court to suspend his license temporarily without a presuspension hearing. We disagree, and adopt the hearing panel's findings and recommendations.

Burleigh is an attorney licensed to practice law in Nevada. In 1978 he was indicted by the Clark County Grand Jury for conspiracy to commit murder and conspiracy to commit arson. In June, 1979, the Southern Nevada Disciplinary Board of the State Bar of Nevada, through its chairman, petitioned this court for a temporary suspension of appellant's license to practice, pursuant to SCR 102(4).[2] We granted the petition. The criminal charges were subsequently dismissed, and the temporary suspension was dissolved by order of this court in July, 1980.[3]

---

[1]THE HONORABLE DAVID ZENOFF, Senior Justice, was assigned to participate in this case by the Chief Justice, pursuant to Nev. Const., art. 6, § 19.

[2]SCR 102(4)(a) provides in pertinent part:

On the petition of a disciplinary board, signed by its chairman or vice chairman, supported by an affidavit alleging facts personally known to the affiant which shows that an attorney appears to be causing great harm by misappropriating funds to his own use, or by other clearly identified acts, the supreme court may issue an order, with notice as the court may prescribe, imposing temporary conditions of probation on the attorney, temporarily suspend him, or both. . . .

[3]No question is raised in this appeal regarding the propriety of State Bar proceedings after dismissal of the criminal charges.

On August 5, 1980, Bar counsel, acting as prosecutor pursuant to SCR 104(1)(c), filed an amended complaint accusing appellant of unethical conduct in three causes of action: conspiracy to murder his former wife, conspiracy to burn an attorney's office, and violation of the terms of the temporary suspension.

Appellant denied the charges, and hearings were held before a hearing panel of the Southern Nevada Disciplinary Board to determine whether discipline was justified. On November 14, 1980, the panel rendered its formal decision, finding that Burleigh had violated Disciplinary Rules DR 1-102(A) (3), (4) and (6) of the American Bar Association Code of Professional Responsibility,[4] by participation and involvement in a plot to kill his former wife, and his failure to disclose such involvement. The panel recommended disbarment and assessment of costs of the proceedings. Burleigh was also found to have violated the terms of his temporary suspension, and the panel recommended that he be fined $500 and publicly reprimanded. The panel found that the State Bar had failed to prove by clear and convincing evidence that appellant had conspired to commit arson, and exonerated Burleigh of this charge.

Appellant's first contention is that he was denied the opportunity to have a fair and impartial hearing because the State Bar is authorized to impose and collect fines and costs from an attorney only if he is found by a hearing panel to have engaged in misconduct. *See* SCR 102(6), SCR 120(1). We find appellant's reliance upon Tumey v. Ohio, 273 U.S. 510 (1927), Ward v. Village of Monroeville, 409 U.S. 57 (1972), and Gibson v. Berryhill, 411 U.S. 564 (1973), to be misplaced. None of these cases dealt with the situation presented here, in which the members of the adjudicating body have neither an individual financial interest in the outcome of the disciplinary proceedings before them, nor any direct responsibility for the financial condition of the State Bar, which is the recipient of any fines and costs which may be levied as a result of such proceedings.

In *Tumey,* the Court found statutes allowing a conviction by a mayor whose salary was paid in part out of fees and costs

---

[4]DR 1-102 provides, in pertinent part:

  (A) A lawyer shall not:

  . . .

  (3) Engage in illegal conduct involving moral turpitude.

  (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

  . . .

  (6) Engage in any other conduct that adversely reflects on his fitness to practice law.

levied by him in adjudicatory proceedings, and who as chief executive officer was responsible for the financial welfare of the village to which the fines were paid, violated constitutional standards. The Court concluded:

> Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused, denies the latter due process of law.

273 U.S. at 532. The Court in Ward v. City of Monroeville, *supra,* found that even in the absence of any individual financial interest in levying fees and costs, a mayor's "executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court," 409 U.S. at 60, and thus render adjudication by him inconsistent with due process standards. These principles were held applicable to an administrative license revocation in Gibson v. Berryhill, *supra.* The Court upheld the trial court's determination that, on the facts presented, individual members of the Alabama Board of Optometry had a personal financial stake in the outcome of their deliberations with regard to the licensing of corporation employees with whom they were in competition.

In this case, the adjudication was conducted by seven members of a hearing panel, chosen from among twenty-one members of the Southern Nevada Disciplinary Board. SCR 103(1). The rules provide that disciplinary board members are to receive no compensation for their services. SCR 103(3). The rules further specifically provide, SCR 103(1), that no member of the disciplinary board may be a member of the board of governors of the State Bar of Nevada, the group responsible for the financial condition of the Bar. SCR 86. There is therefore no basis for a conclusion that the individual panel members had a personal financial stake in the outcome of their deliberations, or that the members had executive responsibilities for the finances of the Bar which would be inconsistent with the due process requirements of *Tumey* and *Ward.*

Here, the disciplinary board has no function except to adjudicate and make recommendations regarding matters of bar discipline. The situation in this case is, therefore, comparable to that in Dugan v. Ohio, 277 U.S. 61 (1928), in which the Court refused to invalidate mayor's court proceedings when

the mayor's salary was not dependent on fines, and where the mayor, as such, had only adjudicative, and not executive, responsibilities. Here the only connection between members of the board and the State Bar is the requirement that the eighteen attorney members be members of the Bar. SCR 103(1). We note that courts have often held that mere membership in a professional organization which has responsibility for prosecution, under peer disciplinary procedures, does not disqualify a judge or other adjudicator from hearing a disciplinary or licensing matter. *E.g.,* Ex Parte Alabama State Bar Ass'n, 8 So. 768 (Ala. 1891); State Board of Dental Examiners v. Miller, 8 P.2d 699 (Colo. 1932); State v. Churchwell, 195 So.2d 599 (Fla.App. 1967); State v. Rhodes, 131 N.W.2d 118 (Neb. 1964).

We therefore conclude that the disciplinary proceedings conducted by the hearing panel were not inconsistent with due process because of the potential for recovery by the State Bar of fines and costs.

Appellant also contends that SCR 102(4) is unconstitutional on its face and as applied to him because his temporary suspension was imposed without a prior hearing. He argues that the resultant infringement of due process should negate any "technical" violations of the suspension order.

The Supreme Court has emphasized that "due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). To determine appropriate procedure, we must consider: (1) the private interest affected; (2) the risk of erroneous deprivation by the procedures used; and (3) the government interest to be protected in light of the fiscal and administrative burdens imposed by additional procedural safeguards. Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

The practice of a profession is, without question, a valuable property right, of which one cannot be arbitrarily deprived. State v. Medical Examiners, 68 Nev. 455, 235 P.2d 327 (1951). A state cannot exclude a person from the practice of law without due process of law, as respondent readily concedes. Schware v. Board of Bar Examiners, 353 U.S. 232 (1957). In this instance, however, the risk of erroneous deprivation is minimized by the provisions of SCR 102(4)(c) and (d). Under these rules, a temporarily suspended attorney is entitled to continue his existing practice for a circumscribed time and may obtain an "immediate hearing" and prompt resolution of the

matter. The government public interest element is evident. The rule on its face only permits this court to order temporary suspension if there are affidavits to support allegations that an attorney is causing "great harm" by his actions; *i.e.,* temporary suspension prior to a hearing is only warranted if "exigent circumstances" exist. *Cf.* State ex rel. Sweikert v. Briare, 94 Nev. 752, 588 P.2d 542 (1978).

We therefore conclude that the rule is not unconstitutional on its face. We also are persuaded that sufficient exigent circumstances existed in this case to justify dispensing with a pre-suspension hearing.

Appellant stood charged, by grand jury indictment, with conspiracy to commit murder and arson. Conviction of similar charges has been held to warrant summary suspension or disbarment, prior to appellate review. *E.g.,* In re Stoner, 507 F.Supp. 490 (N.D.Ga. 1980); Mitchell v. Association of Bar of City of N.Y., 351 N.E.2d 743 (N.Y. 1976). We do not believe, however, that a criminal conviction is a necessary prerequisite to the temporary suspension imposed here. In *Stoner* and *Mitchell* the courts emphatically addressed the importance of protecting the public through bar discipline and the resulting detrimental effect on public confidence in the legal profession if the court failed summarily to suspend the attorneys. Murder and arson are serious charges involving moral turpitude. We have held that "an attempt or conspiracy to commit a crime demonstrates moral turpitude to a like degree as the commission of the crime itself." In re Wright, 69 Nev. 259, 265, 248 P.2d 1080, 1083 (1952). Discipline is appropriately imposed for acts involving moral turpitude, whether or not they relate to conduct by an attorney in his professional capacity. In re Bogart, 511 P.2d 1167 (Cal. 1973). We believe that appellant's continued practice with serious charges leveled against him would erode public confidence in the legal profession and that the facts presented sufficient "exigent circumstances" to warrant summary suspension.

Accordingly, we order that Peter H. Burleigh be, and he hereby is, disbarred from the practice of law in the State of Nevada.

It is further ordered that he be publicly reprimanded for his conduct in violating the attorney disciplinary rules.

It is further ordered that he pay to the State Bar of Nevada a $500 fine for his violation of our temporary suspension order,

together with the costs incurred in connection with his proceedings before the disciplinary committee.

GUNDERSON, C. J., and SPRINGER and MOWBRAY, JJ., concur.

MANOUKIAN, J., concurring:

The majority opinion, in which I concur, is a modification of a draft which I previously distributed and which reached the identical result. The only difference I perceive is that the majority seems now to be unnecessarily preoccupied with a discussion of executive responsibility for State Bar finances.

The disciplinary panel's purported pecuniary interest in the proceedings, if existent, is remote and insubstantial. I believe that the majority opinion inappropriately suggests that *any* executive function or responsibility for the State Bar finances would automatically preclude participation in bar disciplinary matters.[1] For example, the majority states that "executive responsibility for the finances of the Bar . . . would be inconsistent with the due process requirements of *Tumey* and *Ward.*" Not only is that conclusion unnecessary for the resolution of this case, in which the hearing panel has no executive functions, it overlooks and improperly circumvents the Supreme Court's careful analysis of the directness and substantiality of the financial interest in those cases in which executive responsibility and institutional gain are at issue. *See* Ward v. Village of Monroeville, 409 U.S. 57 (1972).

Of course, active participation in bar disciplinary matters by one with executive responsibility for bar finances would necessarily require close scrutiny of the temptation to partiality. However, "[t]he mere union of executive power and the judicial power in [an adjudicator] cannot be said to violate due process of law." Tumey v. Ohio, 273 U.S. 510, 534 (1927). The Supreme Court has looked to many factors, including the substantiality of the adjudicator's purported interest in the outcome of the proceeding and the institutional arrangements for distributing any remuneration obtained. *See* Marshall v. Jerrico, 446 U.S. 238 (1980); Ward v. Village of Monroeville, *supra. See also,* Tumey v. Ohio, *supra.* I do not read the pertinent Supreme Court cases as precedent for finding, as the majority opinion implies, that the prospect of institutional gain

---

[1]Contrary to the majority's statement, SCR 103(10) expressly provides that members of the State Bar's board of governors are also ex-officio members of the disciplinary panels, albeit without the right to vote or to receive remuneration for costs incurred by their participation.

from adjudicative proceedings per se bars the participation of one who may have some responsibility for the financial integrity of the institution.