JEFFREY C. NATCHEZ, O.D., Appellant, v. THE STATE OF NEVADA and NEVADA STATE BOARD OF OPTOMETRY, Respondents.

No. 15803

June 26, 1986                    721 P.2d 361

*Walther, Key, Maupin, Oats, Cox, Lee & Klaich,* and *Monique Laxalt Urza,* Reno, Attorneys for Appellant.

*Brian McKay,* Attorney General, and *Gregory Giordano,* Deputy, Carson City, Attorneys for Respondent The State of Nevada.

*Bible, Santini, Hoy & Miller,* Reno, Attorneys for Respondent State Board of Optometry.

# OPINION

*Per Curiam:*

This appeal challenges the district court's ruling affirming the Nevada State Board of Optometry's decision and interpretation of NRS 636.300(2) and (5) which prohibits the employment of an optometrist by an ophthalmologist. We affirm the decision of the district court.

## THE FACTS

Appellant Jeffrey C. Natchez is an optometrist licensed by the Nevada State Board of Optometry (Board). Jack E. Talsma is a licensed physician in Nevada. By virtue of his status as a physi-

cian, Talsma is also an ophthalmologist.[1] Talsma is not licensed by the Nevada State Board of Optometry.

Natchez practices optometry under the name of Carson Vision Clinic in Carson City, Nevada. Natchez is a salaried employee of Talsma. Local optometrists filed a complaint against Natchez. The optometrists alleged that Natchez's employment by an ophthalmologist violated NRS 636.300(2) and (5).

NRS ch. 636 sets forth the statutory provisions regulating the optometry profession in Nevada. NRS 636.200(2) and (5) bar employment by ''a person not licensed to practice optometry in this state'' and the division of fees with ''any person not an optometrist'' as unethical or unprofessional acts and subject an optometrist to the suspension or revocation of his license under NRS 636.295(9).[2]

The Board held that Natchez violated NRS 636.300(2) and (5) by virtue of his employment relationship and compensation and fee arrangement with Talsma. It also held that Natchez's practice of optometry under the name Carson Vision Clinic violated NRS 636.350. The Board ordered that based upon the finding of unethical or unprofessional conduct, Natchez's license to practice

---

[1]An ophthalmologist is a duly licensed physician who specializes in the care of eyes. Annot., 88 A.L.R.2d 1290, 1292 (1963). An optometrist examines eyes for refractive error, recognizes (but does not treat) diseases of the eye, and fills prescriptions for eyeglasses. *Id.* The professions, while complementary, are distinct.

[2]NRS 636.300 provides in relevant part:

Any of the following acts by a licensee constitutes unethical or unprofessional conduct:

. . . .

(2) Accepting employment, directly or indirectly, from a person not licensed to practice optometry in this state for the purpose of assisting him in such practice or enabling him to engage therein.

. . . .

(5) Division of fees or any understanding or arrangement with any person not an optometrist.

NRS 636.295 provides in relevant part:

The following acts, conduct, omissions, or mental or physical conditions, or any of them, committed, engaged in, omitted, or being suffered by a licensee, shall constitute sufficient cause for revoking or suspending the license:

. . . .

(9) Perpetration by the licensee of unethical or unprofessional conduct in the practice of optometry, within the provisions of NRS 636.300.

We note that while these provisions were amended in 1985 the substantive effect of these statutory provisions remains unchanged.

optometry be suspended for three months. It stayed the suspension and placed Natchez on probation to allow Natchez time to comply with NRS ch. 636.

Natchez filed a petition for judicial review. The district court issued a judgment affirming the Board's interpretation of NRS 636.300(2) and (5) and rejecting Natchez's assignments of error. Natchez appeals this judgment.

## NRS 636.300(2) and (5)

We first consider Natchez's contention that the legislature did not intend NRS 636.300(2) and (5) to bar an optometrist from being employed by an ophthalmologist or to ban the division of fees between optometrists and ophthalmologists.

NRS 636.390 specifically exempts physicians and surgeons from the regulatory provisions of NRS ch. 636.[3] NRS ch. 636 creates a distinction between optometrists and ophthalmologists for regulatory purposes: ophthalmologists are regulated by the Board of Medical Examiners and optometrists are regulated by the Board of Optometry. NRS 636.300(2) prohibits optometrists from accepting employment from a person not licensed under NRS ch. 636 to practice optometry. NRS 636.300(5) prohibits the division of fees by an optometrist with a person who is not an optometrist. NRS 636.390 provides that an ophthalmologist is not bound by the regulations governing optometrists under NRS ch. 636. The plain language of the statutory provisions demonstrates that the legislature intended to include an ophthalmologist within the definition of "a person not licensed to practice optometry" and "not an optometrist" for purposes of NRS 636.300(2) and (5), and all other provisions of NRS ch. 636. Accordingly, the legislature intended to prohibit an optometrist from being employed by an ophthalmologist.

A review of the legislative history of NRS ch. 636 after the commencement of this action confirms this interpretation of legislative intent. Subsequent to and in direct response to the district court's decision in the case at bar, a bill was introduced into the 1985 legislative session to amend NRS ch. 636 to permit the employment of optometrists by ophthalmologists. Prior to the bill's enactment, the legislature deleted this provision. Thus, when presented with an amendment of NRS ch. 636 permitting this type of business practice, the legislature rejected it. Where a former statute is amended or a doubtful interpretation of a former

---

[3]NRS 636.390 provides:

> This chapter shall not be construed to apply to physicians and surgeons duly licensed to practice in this state.

statute is rendered certain by subsequent legislation, it has been held that such amendment is persuasive evidence of the legislature's intention in the first statute. Hughes Properties v. State of Nevada, 100 Nev. 295, 680 P.2d 970 (1984).

We conclude that the legislature intended to prohibit the employment of optometrists by ophthalmologists. Accordingly, we conclude that Natchez's arguments lack merit.

### THE RIGHT TO AN IMPARTIAL TRIBUNAL

We next turn to Natchez's contention that he was deprived of his due process right to a fair and impartial tribunal. Natchez argues that the composition of the Board (composed of four members: one public member and three members of the optometry profession) created the potential for and appearance of bias. Moreover, Natchez complains that the secretary of the Board participated in the drafting of the complaint against him and then engaged in limited questioning at his hearing.

Natchez claims that the employment relation between ophthalmologists and optometrists presented a threat to the competitive advantage of each of the optometrist-Board members who were sole practitioners. Natchez suggests that it was in their economic and competitive advantage to prohibit this type of an employment relation. Natchez argues that as in Gibson v. Berryhill, 411 U.S. 564 (1973), the Board had a substantial pecuniary interest in the proceedings and, hence, he was deprived of his right to a fair and impartial hearing. Natchez does not allege any facts that would constitute actual bias by a Board member, *i.e.*, that any particular Board member had a personal, economic interest in prohibiting the employment of optometrists by ophthalmologists.

As a threshold matter, we note that Natchez raised this issue for the first time on appeal. Thus, Natchez's assignment of error is untimely. *See,* United States v. Tucker Truck Lines, 344 U.S. 33 (1952). Nonetheless, as the issue raised by Natchez is of constitutional dimension, we will consider the merits of his claim. *See* McCullough v. State, 99 Nev. 72, 657 P.2d 1157 (1983).

Mere membership in a professional organization which has responsibility for prosecution, under peer disciplinary procedures, does not indicate a disqualifying bias or interest on the part of a judge or other adjudicator sufficient to violate due process. *See* Burleigh v. State Bar of Nevada, 98 Nev. 140, 643 P.2d 1201 (1982); Kachian v. Optometry Examining Board, 170 N.W.2d 743, 748 (WI 1969). In Gibson v. Berryhill, 411 U.S. 564 (1973), the United States Supreme Court found that the members of the Board of Optometry in Alabama had a substantial pecu-

niary interest in the proceedings, and, hence, bias, and deprived the petitioners of their right to a fair and impartial hearing. In *Gibson,* the Board sought to revoke the licenses of all optometrists employed by certain business corporations. *Id.* This would have meant revoking the licenses of nearly half the optometrists practicing in Alabama. *Id.* The court found that the Board's pecuniary interest in revoking all of these licenses had sufficient substance to warrant disqualification. The case at bar is distinguishable from *Gibson.*

In the instant case, Natchez failed to set forth any facts to establish his allegation that a rivalry existed between sole practitioners, optometrists, and optometrists employed by ophthalmologists. The Board did not prohibit Natchez from practicing optometry. Thus, the Board would not incur any economic gain by prohibiting this type of business practice, as Natchez was free to retain his existing clientele after he ceased his employment with Talsma.

As the court stated in Kachian v. Optometry Examining Board, 170 N.W.2d 743 (Wis. 1969):

> If the indirect interest deriving from membership in the profession or occupation being regulated disqualifies an individual from serving on a regulatory board, the result would be dentists could not examine dentists, attorneys could not serve on bar examiner boards, pharmacists could not give pharmacy examinations. Would it be preferable, or even workable, to have the dentists giving bar examinations and optometrists giving pharmacy tests? The gain in presumed purity would be matched by a loss in knowledge and experience in drafting and administering professional and occupational rules and regulations.

Finally, the fact that the secretary of the Board participated in the filing of the complaint and then asked Natchez limited questions during the hearing did not violate Natchez's due process rights. The secretary of the Board voluntarily disqualified himself from deciding the case and abstained from voting. Substantial evidence supports the district court's decision that there was no evidence presented to indicate that the secretary of the Board participated in or influenced the Board's deliberations in any way. Ivory Ranch v. Quinn River Ranch, 101 Nev. 471, 705 P.2d 673 (1985).

We conclude that in the case at bar the Board did not have a pecuniary interest nor a disqualifying bias in the proceedings. Natchez's due process right to a fair and impartial tribunal was not violated. *See* Burleigh v. State Bar of Nevada, 98 Nev. 140,

643 P.2d 1201 (1982); *Contra* In Re Ross, 99 Nev. 1, 656 P.2d 832 (1983); Gibson v. Berryhill, 411 U.S. 564 (1973).

We have reviewed appellant's remaining contentions and conclude that they are meritless.

Accordingly, we affirm the district court's decision in all respects.