Alan J. MISHLER, M.D.,
Plaintiff–Appellant,

v.

NEVADA STATE BOARD OF MEDICAL EXAMINERS; Robert C. Clift, M.D., et al., Defendants–Appellees.

No. 87–2890.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1989.

Decided Feb. 16, 1990.

Stephen L. Pevar, American Civil Liberties Union, Denver, Colo., and Peter J. Smith, Carson City, Nev., for plaintiff-appellant.

Daniel H. Haight, Deputy Atty. Gen., Las Vegas, Nev., for defendants-appellees.

Before HALL, NOONAN and LEAVY, Circuit Judges.

NOONAN, Circuit Judge:

Allan J. Mishler brought suit under 42 U.S.C. § 1983 against the Nevada State Board of Medical Examiners, the State of Nevada, and nine individuals who were members of the Nevada Board. The district court dismissed his suit for failure to state a claim. We reverse and remand for trial.

## ALLEGATIONS

Mishler alleges that he has been a physician of 25 years, specializing in neurosurgery and certified as a specialist in that field by the American Board of Neurological Surgery. He is licensed to practice in five states, including Nevada. In April 1985, then practicing in Nevada, he was offered a position in Ohio. Intending to accept the offer, he closed his practice in Nevada and moved to Ohio. It became necessary for him to obtain a license to practice in Ohio.

Upon his application for the Ohio license the Ohio Board of Medical Examiners in April 1985 inquired of the medical boards of the five states in which he was already licensed whether he was in good standing. Four boards replied promptly, issuing a letter of verification stating that he was. The Nevada State Board of Medical Examiners (the Board) did not reply. Mishler checked and in July 1985 it informed him that a letter of verification would be issued. In August 1985 the Board informed him that the letter had been signed. In September 1985 the letter had still not issued and the Board told Mishler that he was under investigation and that no letter of verification would be sent. Mishler asked the Board for written notice of any charges against him and explanation of the evidence upon which the Board's investigation was based. The Board denied this request. A year later, on September 17, 1986, seventeen months after the inquiry from Ohio, the Board filed disciplinary charges against Mishler.

The consequence of Mishler not receiving the letter of verification from Nevada was that he was unable to obtain a medical license in Ohio and so could not practice in that state. The Board and the individual members of the Board were advised by Mishler that their inaction for seventeen months would have this consequence. With malice and in reckless disregard of Mishler's rights they failed to act. Their seventeen-month inaction deprived Mishler of property.

## ANALYSIS

Whether Mishler has stated a claim for relief is a legal issue and we accordingly review de novo. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989). For this purpose we accept the allegations as true. *Love v. United States*, 871 F.2d 1488, 1491 (9th Cir.1989). The central issue in this appeal is whether Mishler was deprived of a property interest protected by the United States Constitution.

Mishler's claim that he was deprived of his property without due process of law should be analyzed using the "familiar two-part inquiry" explicated by the Supreme Court in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982): (1) was he deprived of a protected interest; and (2) what process was his due? *Id.* at 428, 102 S.Ct. at 1153.

■ That a professional license is property and is protected by the Constitution is

recognized by both Nevada law, *State ex rel. Kassabian v. State Bd. of Medical Examiners*, 68 Nev. 455, 235 P.2d 327, 331 (1951), and by federal law, *Schware v. Bd. of Bar Examiners*, 353 U.S. 232, 238–39, 77 S.Ct. 752, 755–56, 1 L.Ed.2d 796 (1957). The Board could not, consistently with the due process clause, deprive Mishler of his license.

■ The Board's position is that it did not deny Mishler his right to practice in Nevada. During the seventeen months the Board delayed, Mishler was entirely free to exercise his license in Nevada. Nothing the Board did infringed upon this right. As far as Ohio is concerned, Mishler had no license there. What happened there was Ohio's responsibility, not that of the Nevada Board. Nothing was taken from Mishler in Ohio by the Board for he had no property in Ohio and the Board exercised no authority in Ohio. If he moved precipitously from Nevada to Ohio before getting his letter of verification from the Board, his consequent unemployment in Ohio was, so the Board implies, his own bad judgment or hard luck. All he had to do was to come back to Nevada where his Nevada license was property that he could continue to enjoy as long as the Board did not act against him. The Board states this position by arguing that the Board was not the cause of any harm to him.

The Board's position is insufficiently attentive to the elements that composed Mishler's license to practice medicine in Nevada. Property consists in a bundle of rights. The property comprising a professional license includes not only the right to practice the profession but the right to obtain official verification of the existence of the right. For example, if Mishler had been sued in Nevada by a patient claiming that Mishler was unauthorized to practice medicine, Mishler's license surely entitled him to obtain from the Board a letter declaring that he was in fact authorized to practice. The case is not different when the question as to Mishler's right to practice is raised in another state. In modern America it is a matter of course that professionals will move from state to state and

doing so be dependent upon certification of their professional standing in the state from which they come. An essential element of a professional license, part of the property comprising the license, is the right to have one's good standing in the profession certified by the agency that has issued the license.

To determine what process was due Mishler, "it is necessary to weigh the risk of an erroneous deprivation, the state's interest in providing (or not providing) specific procedures, and the strength of the individual's interest." *Haygood v. Younger*, 769 F.2d 1350, 1356 (9th Cir.1985) (en banc), *cert. denied sub nom. Cranke v. Haygood*, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986) (citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

It is unnecessary on this appeal to determine what would have been a reasonable time for the Board to have responded to the inquiry from Ohio. No doubt the Board did not have to respond by return post. Seventeen months or even five months was too long to wait. All that was asked and all that was necessary was for the Board to certify Mishler's current standing. Bureaucracies, like courts, are often noted for the slow pace of their decisions. Delay, which is always regrettable, can, as alleged here, go beyond the intolerable to the unconstitutional.

The court invited the parties to brief it upon the question of whether Mishler could have obtained relief from the Board by an action of mandamus in the state court pursuant to Nev.Rev.Stat. § 34.160. As an abstract possibility we do not see why this remedy for his deprivation did not exist. The Board, however, takes the position that it had no legal duty to issue the letter of verification and that therefore an action of mandamus did not lie. Mishler declares that he investigated the possibility and found that it would be futile, possibly frivolous. The parties agree that this state remedy for Mishler's deprivation was unavailable. *See Ostlund v. Bobb*, 825 F.2d 1371, 1373 (9th Cir.1987), *cert. denied* 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988); *Private Investigator's Licensing*

*Bd. v. Atherley,* 98 Nev. 514, 654 P.2d 1019, 1029 (1982).

■ Mishler, therefore, has alleged malicious or reckless taking of his property by the Board and the individual members of the Board, acting under color of official right and so depriving him of property secured by the Constitution of the United States. He has stated a cause of action under 42 U.S.C. § 1983.

REVERSED AND REMANDED FOR TRIAL.

LEAVY, Circuit Judge, dissenting:

Mishler brought the present action under 42 U.S.C. § 1983 (1982), alleging that "[t]he procedures that the Board followed during its investigation of the plaintiff were unduly protracted, manipulative, and unnecessarily deleterious, and violated rights guaranteed to the plaintiff by the Fourteenth Amendment to the United States Constitution." Complaint at 1–2. The named defendants were the Nevada Board of Medical Examiners ("the Board") and various members of the Board, in their individual and official capacities. *Id.* at 2–3.

Mishler's right to relief cannot be based on section 1983 itself. It is well-established that a section 1983 complainant must establish a claim for relief grounded on some constitutional or statutory right other than section 1983. "[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 does not protect anyone against anything." *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617, 99 S.Ct. 1905, 1915, 60 L.Ed.2d 508 (1979). Rather, "[section 1983] merely provides a remedy for the violation of rights conferred by the Constitution or other statutes." *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980).

Mishler grounded his right to relief under section 1983 *exclusively* on the theory that the defendants' conduct violated Mishler's rights to procedural due process. "This lawsuit is being brought by a physician whose rights to procedural due process were violated by the Nevada Board of Medical Examiners." Complaint at 1. In procedural due process cases, our inquiry is to determine (1) whether the complainant is deprived of a protected interest; and, if so, (2) whether due process was provided the complainant before the state effected the deprivation. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1988).

In my view, the defendants did not, either individually or in their official capacities, deprive Mishler of any protected interest. State law did not create a protected interest in the prompt reply to Ohio's inquiry. As Mishler concedes, Nevada law does not guarantee such a reply, whether the inquiring entity be a sister state, a foreign sovereign, or a private individual.

Assuming Mishler had a constitutionally protected interest in the legal exercise of his profession, these defendants did not deprive him of that interest. Mishler has not alleged that the defendants prevented him from practicing medicine within Nevada. Moreover, these defendants are not responsible in any constitutional sense for depriving Mishler of the right to practice medicine in Ohio. The Ohio Board of Medical Examiners has a policy of denying licenses to applicants licensed in other states, if one of the Boards of the other states fails to submit promptly a letter verifying the applicant's good standing. The defendants, the members of the Nevada Board, could hardly be responsible for Ohio's licensing policies. The defendants did not effect a deprivation of a protected interest.

In conclusion, I disagree that the defendants' failure to reply promptly to Ohio's inquiry constituted a deprivation of a protected interest, for which process is due. I thus cannot share the view that the Ohio Board, in the name of due process, has the extraterritorial power to compel an act by the Nevada Board, which act is not even required under Nevada law.