WEST VIRGINIANS FOR LIFE, INC., Joseph Shoda, Treasurer of West Virginians For Life, Beth Pruett, Kenneth Pruett, Dallas Bragg, and Karen Suzanna Brooks, Plaintiffs,

v.

Charles R. SMITH, in his official capacity as Prosecuting Attorney for Mercer County, West Virginia, and as a representative of the class of Prosecuting Attorneys in the State of West Virginia, Ken Hechler, in his official capacity as Secretary of State for West Virginia and as an ex-officio member of the West Virginia Election Commission, Defendants.

Civil Action No. 1:96–0068.

United States District Court,
S.D. West Virginia,
Bluefield.

Dec. 20, 1996.

William C. Porth, Robinson & McElwee, Charleston, WV, James Bopp, Jr., Bopp, Coleson & Bostrom, Terre Haute, IN, for plaintiffs.

Charles R. Smith, Princeton, WV, pro se.

Darrell V. McGraw, Jr., Atty. Gen., Amie Johnson, Asst. Atty. Gen., Charleston, WV, for defendant Ken Hechler, Sec. of State.

## OPINION ON ATTORNEYS' FEES AND COSTS

FABER, District Judge.

Pending before the court are the Motion for Attorneys' Fees & Expenses filed by the plaintiffs on September 12, 1996, and the Supplemental Motion for Attorneys' Fees and Expenses filed by plaintiffs on November 1, 1996. Plaintiffs' counsel, James Bopp, Jr., Bopp Coleson & Bostrom, Terre Haute, Indiana, and William C. Porth, Robinson & McElwee, Charleston, West Virginia, submit their fee petitions under the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988. The petitions include time expended by other members of Bopp's and Porth's firms as well as themselves.

### I. Introduction

Plaintiffs brought this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief under the Constitution of the United States of America. Plaintiffs charged that recent amendments to Chapter Three of the Campaign Finance Laws of West Virginia, W.Va.Code §§ 3–1A–1 through 3–1B–10, (1995), violated the First Amendment by chilling their free speech rights. Defendants are Secretary of State Ken Hechler, West Virginia's chief election official, and Prosecuting Attorney Charles R. Smith of Mercer County, as representative of a class consist-

ing of the fifty-five prosecuting attorneys in West Virginia.

By Order entered on March 11, 1996,[1] this court preliminarily enjoined defendants Hechler and Smith from enforcement of the challenged statute. Subsequently, this court certified the class and, on August 29, 1996, granted summary judgment to plaintiffs, permanently enjoining enforcement of the statute. Defendants have not appealed the court's ruling and the time for appeal has expired.

Bopp, Coleson & Bostrom seeks fees and expenses totaling $33,910.77 and Robinson & McElwee asks for fees and expenses of $11,385.76. Defendants apparently do not contest plaintiffs' entitlement to an award of attorney fees and costs, but contend that the hourly rates claimed and time expended are unreasonable.

## II. Discussion

■ The Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988, provides, in pertinent part, that in federal civil rights actions brought pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the costs." Our court of appeals has confirmed that the purpose of section 1988 "is to ensure effective access to the judicial process for persons with civil rights grievances without simultaneously producing windfalls to the attorneys." *Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 73 (4th Cir.) *cert. denied*, — U.S. ——, 116 S.Ct. 535, 133 L.Ed.2d 440 (1995). In order to effectuate such purpose, the prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust. *Spell v. McDaniel*, 852 F.2d 762, 765 (4th Cir.1988). The burden of establishing applicability of attorneys' fees and costs remains with the fee applicant throughout the entire proceeding. *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir.1992). However, the granting of such request lies within the court's broad discretion, provided the court

"demonstrates a carefully reasoned analysis of both the factual circumstances and relevant legal precedents." *Cooper v. Dyke*, 814 F.2d 941, 950 (4th Cir.1987). So long as the trial court applies proper criteria, fee awards are reviewed using an abuse of discretion standard. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir.1994).

### A. Prevailing Party

■ As a threshold matter, this court must determine whether the plaintiffs are, in fact, "prevailing parties" within the meaning of 42 U.S.C. § 1988. The Supreme Court set out the appropriate test in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978)): "Plaintiffs may be considered 'prevailing parties' for attorneys fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." In *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992), the Supreme Court clarified this test, stating that "the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." (quoting *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989)). In civil rights cases, in particular, the plaintiff must obtain some relief on the merits of his or her claim through an enforceable judgment. *Id.* at 112.

■ Here, there is no question that plaintiffs are prevailing parties. They obtained a summary judgment order granting the precise relief prayed for in their complaint—a determination that the challenged statute was unconstitutional and a permanent injunction against its enforcement. Defendants do not question the proposition that plaintiffs are prevailing parties under 42 U.S.C. § 1988.

---

1. The court's rationale for this decision is contained in its opinion published at 919 F.Supp.

954 (S.D.W.Va.1996).

## B. Calculation of Reasonable Fees and Expenses

In fashioning a reasonable award, "the court begins by multiplying a reasonable number of hours by a reasonable hourly fee to arrive at the lodestar figure." *Stacy v. Stroud,* 845 F.Supp. 1135, 1138 (S.D.W.Va. 1993). The Supreme Court in *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), opined that the lodestar figure has become the guiding light of courts' analyses in this area. Moreover, a strong presumption arises that the lodestar represents a reasonable fee. *Id.* at 562, 112 S.Ct. at 2641; *Trimper v. City of Norfolk, Va.,* 846 F.Supp. 1295, 1304 (E.D.Va.1994) *aff'd,* 58 F.3d 68 (4th Cir.1995). In determining whether the lodestar claimed by counsel is accurate and whether or not it should be adjusted, the Fourth Circuit Court of Appeals has long followed the twelve-factor analysis of *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974). *See, Trimper,* 58 F.3d at 73; *Daly v. Hill,* 790 F.2d 1071, 1077 (4th Cir.1986). In *Trimper,* the court restated the *Johnson* factors as follows: (1) The time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented; (3) the skill required properly to perform the legal service; (4) preclusion of other employment opportunities; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases. The court will consider each *Johnson* factor in turn.

### (1) Time and Labor Expended

The fee applicant bears the burden of producing detailed time sheets sufficient to justify the amount of hours he claims to have expended. *Chalmers v. City of L.A.,* 796 F.2d 1205, 1210 (9th Cir.1986). Having carefully reviewed plaintiffs' submissions in this regard, the court finds that the plaintiffs have satisfied their burden in that they have submitted an itemized list of their hours and expenses, as well as a short explanation for each entry explaining how the time was spent.

Defendants contend that the hours billed are excessive in that an inordinate number of telephone calls were made between Indiana and West Virginia counsel, too many intra-firm meetings were held at the Indiana firm to discuss the case, tables of authorities and contents for plaintiffs' briefs were prepared by attorneys rather than clerical personnel and Mr. Porth's records show double entries for the same tasks on May 6, 1996, and May 7, 1996. Defendants also contend that plaintiffs' counsel spent an excessive amount of time preparing the petitions for fees and costs and that no time should have been charged for submission of supplemental authority after the briefs were filed or for certification of the class.

Except for Mr. Porth's double entry, which plaintiffs concede should be eliminated, the court finds defendants' attacks on the amount of time devoted to this case to be without merit. The court has carefully reviewed the time charges and deems them to be reasonable under all the facts and circumstances of this case. The court notes that the bulk of the work was done by attorneys with lower hourly rates than Mr. Bopp, the attorney in charge of the case. Close coordination with local counsel is necessary and is to be encouraged in a case such as this where lead counsel is not a permanent member of the bar of this court. The court finds that the hours charged, including hours devoted to preparation of the fee petition, to providing supplemental authority to the court, and to class certification are reasonable.

### (2) Novelty and Difficulty

Plaintiffs' lead counsel has been involved in similar cases in other states. While the West Virginia statute in question may contain some unique characteristics, the court concludes that this case did not involve novel or difficult questions of law and the result was controlled by similar decisions of the courts. Plaintiffs are therefore not entitled to any upward adjustment of the lodestar

figure on this ground. Similarly, the court concludes that this factor does not warrant a downward departure from the lodestar.

### (3) Skill Required to Perform Services Involved

This case involved a specialized area of the law for which plaintiffs' counsel were well-prepared by experience in other cases. The court concludes that no adjustment up or down from the lodestar figure is warranted on this ground. Less expert counsel would have required more time to provide the legal services involved here, but could not have charged rates which are as high as those of plaintiffs' counsel. Similarly, the hourly rates commanded by plaintiffs' counsel adequately reflect their level of expertise.

### (4) Preclusion of Other Employment

While plaintiffs' lead counsel maintains that this case taxed the resources of his firm, there is no evidence before the court that other specific business was lost as a result. Mr. Porth indicates this case precluded him from other contingency fee cases since he limits the number of such cases he takes each year; he offered no evidence of any specific lost opportunities, however. The court concludes that no adjustment of the lodestar figure is called for on this ground.

### (5) The Customary Fee

 A fee award is calculated using the prevailing market rate. *Blum v. Stenson,* 465 U.S. 886, 894, 104 S.Ct. 1541, 1546, 79 L.Ed.2d 891 (1984). In support of the plaintiffs' view of what a customary fee for like work would be, the plaintiffs should submit affidavits from themselves as well as other attorneys "regarding prevailing fees in the community, and rate determination in other cases, particularly those setting a rate for the plaintiff's attorney." *United Steelworkers v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir.1990). Such submissions would constitute ample evidence of the prevailing market rate. *Id.*

 Plaintiffs have submitted the affidavits of Mr. Bopp and Mr. Porth and of Pro-

fessor Patrick C. McGinley and Harry G. Camper, Jr. to support the following claimed hourly rates for the attorneys who worked on this case:

Attorneys with Bopp, Coleson & Bostrom:

| | |
|---|---|
| Mr. Bopp | $ 250 |
| Mr. Coleson | 150 |
| Mr. Abegg | 100 |

Attorneys with Robinson & McElwee

| | |
|---|---|
| Mr. Porth | $ 170 |
| Mr. George | 110 |
| Mr. Chase | 100 |

Defendants challenged only the hourly rates for Mr. Bopp and Mr. Porth and offered, in support, the affidavit of Mike Kelly, a West Virginia lawyer who devotes approximately eighty percent of his practice to civil rights cases. Mr. Kelly believes the fair market rate for these cases to be $150 per hour and is not aware of any court awarding $250 per hour.

The affidavits offered by the parties are not necessarily in conflict. Mr. Kelly spoke only of a general fair market rate, while the affidavits of Professor McGinley and Mr. Camper were specific as to Mr. Bopp and Mr. Porth and attorneys of similar experience and reputation. The court notes that Mr. Bopp and his firm are nationally-known experts in this field of litigation with wide experience in various cases from different parts of the country. Similarly, Mr. Porth is experienced in constitutional cases and in litigation before this court and provided valuable and necessary services as local counsel. The court concludes that the rates of $250 for Mr. Bopp and $170 for Mr. Porth are reasonable, particularly in view of the fact that the attorney with the greatest amount of time charged to this case was Mr. Abegg, who has the lowest hourly rate. (As noted above, defendants have not challenged the hourly rate charged by Mr. Abegg.) The court further finds that responsible decisions were made by counsel concerning the division of labor among the attorneys who worked on the case, thereby providing an effective average hourly rate for the entire case well below the specific hourly rate for Mr. Bopp.[2]

---

**2.** The average hourly rate as calculated by the court for the entire case is $148.94. This is

### (6) Whether the Fee is Fixed or Contingent

The affidavit of Mr. Porth, filed on September 12, 1996, indicates that his firm took this case on a contingent fee arrangement, apparently meaning that receipt of a fee is contingent upon plaintiffs prevailing in the litigation and receiving a fee award under 42 U.S.C. § 1988. The affidavit of Mr. Bopp appears to be silent on this point, but Mr. Porth asserts that he believes plaintiffs could not have afforded to bring this action and pay normal hourly rates for litigation. The court therefore concludes that both plaintiffs' law firms assumed the risk that they would not be paid unless they were successful in the litigation. The court believes this risk is a further factor which entitles counsel to be compensated at the rates they have requested.

### (7) Time Limitations

Plaintiffs were working under the deadline of an approaching primary election, but filed the case many months after the statute was passed. Accordingly, the court finds that this factor does not call for any adjustment, up or down, in the lodestar figure.

### (8) Amount Involved and Results Obtained

As noted above, plaintiffs obtained the precise relief sued for. There was no "amount" involved since this is an injunction case and no damages were sought or awarded. While the plaintiffs were entirely successful, the court does not deem such success to warrant an increase in the lodestar figure since the court's decision basically followed existing Supreme Court cases and authority from other jurisdictions.

### (9) Experience, Reputation and Ability of Attorneys

As discussed above under *Johnson* factor 5, the court deems this factor to be adequate-

ly reflected in the hourly rates charged and therefore will not adjust the lodestar figure on this ground.

### (10) Undesirability of Case

This factor is apparently not relevant in the present case. There is no evidence that plaintiffs were "undesirable" clients as that term is used in *Johnson*.

### (11) Nature and Length of Relationship with Client

There is no evidence that either law firm has a continuing relationship with the specific plaintiffs in this case and can expect additional business from them. Bopp, Coleson & Bostrom, however, has a history of involvement in similar cases. The court does not believe this factor calls for any adjustment in the lodestar.

### (12) Awards in Similar Cases

The court has considered this factor in connection with *Johnson* factor 5 discussed above. Additionally, the rates sought by Mr. Bopp and his firm are actually lower than rates commanded by them in similar cases pursued in other jurisdictions. (*See* Bopp Affidavit filed on September 12, 1996, p. 6.)

The court concludes that the "lodestar" fee is reasonable and appropriate and, accordingly, awards to plaintiffs $32,525.00 in fees charged by Bopp, Coleson & Bostrom and $10,237.00 in fees charged by Robinson & McElwee.[3]

The court further finds that the costs and expenses incurred by plaintiffs are ordinary and reasonable and awards to plaintiffs $1,385.77 in costs and expenses incurred by Bopp, Coleson & Bostrom and $892.86 in costs and expenses incurred by Robinson & McElwee.

---

strikingly close to the $150 figure defendants' expert, Mr. Kelly, gave as the fair market rate for civil rights cases in West Virginia. Under defendants' own evidence, therefore, the rates here approximate "prevailing market rates in the relevant community" under the standard of *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).

**3.** This figure is arrived at by deducting $374.00 for Mr. Porth's "double entry" referred to above from the total fee claimed by his firm in the two petitions.

## C. Responsible Defendant

 Plaintiffs argue that the entire award should be paid by defendant Hechler. Hechler contends that the award should be divided equally among him and West Virginia's fifty-five prosecuting attorneys who make up the defendant class. The court agrees with the plaintiffs.

The United States Supreme Court has held that the real party in interest in a civil rights case against state officials in their official capacity is the state. *Hutto v. Finney,* 437 U.S. 678, 700, 98 S.Ct. 2565, 2578, 57 L.Ed.2d 522 (1978). In two cases, *Wyatt v. Cole,* 928 F.2d 718 (5th Cir.1991) *rev'd on other grounds,* 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992), and *Echols v. Parker,* 909 F.2d 795 (5th Cir.1990), the United States Court of Appeals for the Fifth Circuit has held the State of Mississippi liable for § 1988 fees attributable to litigation against county officials who acted as state agents in enforcing unconstitutional statutes.

 Passage of the statute involved in this case was the work of the West Virginia Legislature, which attempted to circumvent legal precedent through the transparent device of a presumption that expenditures made within sixty days of an election are express advocacy. The attempted infringement of plaintiffs' constitutional rights was therefore the work of the State. Secretary Hechler, as the State's chief election official, defended the unconstitutional statute in this case and was willing to enforce it until the court intervened. The State's prosecuting attorneys would have been acting primarily for the State, not their own county governments, in assisting Secretary Hechler to implement the statute. It would be patently unfair to require West Virginia's fifty-five county governments to shoulder a share of the cost of the State's unconstitutional action. The court therefore orders that the entire amount of the award be paid by Secretary Hechler.[4]

4. The award will, of course, be the responsibility of the State of West Virginia since Hechler was sued in his official capacity. A § 1988 fee award against a state officer sued in his official capacity imposes liability on the state. *Brandon v. Holt,*

## III. Conclusion

For the reasons set forth above, the court **GRANTS** plaintiffs' motions for attorneys' fees, costs and expenses and awards plaintiffs $33,910.77 ($32,525.00 in fees and $1,385.77 in costs and expenses) incurred by Bopp, Coleson & Bostrom, and $11,129.86 ($10,237.00 in fees and $892.86 in costs and expenses) incurred by Robinson & McElwee. A separate Judgment Order will be entered today implementing this ruling.

469 U.S. 464, 471–73, 105 S.Ct. 873, 877–79, 83 L.Ed.2d 878 (1985). The court has no intention to impose any personal liability on Secretary Hechler.