Iris I. BOSTIC, Plaintiff,

v.

AMERICAN GENERAL FINANCE, INCORPORATED, et al., Defendants.

No. Civ.A. 2:98–0206.

United States District Court, S.D. West Virginia, Charleston Division.

March 6, 2000.

Daniel F. Hedges, Mountain State Justice, Inc., Charleston, WV, Nina F. Simon, Jean Constantine–Davis, AARP Foundation Litigation, Washington, DC, for plaintiff.

Thomas R. Goodwin, Richard D. Owen, Carrie G. Fenwick, Booth Goodwin, Goodwin and Goodwin, Charleston, WV, T. Thomas Cottingham, III, Matthew P. McGuire, A. Meredith Barton, Robert R. Merhige, IV, Hunton & Williams, Charlotte, NC, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Plaintiff Iris Bostic's motion for award of attorney fees. The Court **GRANTS** the motion as moulded.

### I. FACTUAL BACKGROUND

In 1997, 65 year-old Iris Bostic took out a home equity loan with Defendants (AGF). She filed a complaint in March 1998, alleging the loan violated the Truth in Lending Act (TILA) and the West Virginia Consumer Credit Act (WVCCA). She further alleged AGF's actions constituted fraud. In January 1999, she amended the complaint to add a claim under the Equal Credit Opportunity Act (ECOA).[1] Beyond these undisputed facts, the parties' respective historical views of the litigation diverge dramatically. Their disputes center around the time, nature and necessity of the work performed by Bostic's lawyers. The Court has distilled the numerous factual and legal disputes to nine main differing accounts of relevant case events.

According to Bostic's lawyers, (1) AGF engaged in extensive delays in producing discovery, greatly increasing the hours expended; (2) Bostic's discovery efforts produced a "wealth" of information bolstering virtually all of her claims; (3) while much discovery remained outstanding, AGF moved prematurely for summary judgment, increasing the cost of litigation; (4) while AGF's discovery delays impacted timely preparation of an expert report, Bostic was prepared, had the case not settled, to disclose necessary witnesses and to provide an expert report; (5) it was necessary for lead counsel Dan Hedges to hire co-counsel, as AGF routinely used four to five qualified lawyers, with whom he could not have kept pace alone; (6)

---

1. The case settled on August 9, 1999. The details of the settlement are discussed *infra*.

assisting counsel with experience in this area is typically unavailable in Charleston, West Virginia and the American Association of Retired Persons (AARP)[2] lawyers were crucial to developing witnesses for the technical insurance issues and the briefing on the ECOA and TILA claims; (7) AGF rejected three reasonable settlement overtures and made none of their own; (8) the case settled in the summer of 1999 due in large measure to Bostic's serious health problems and consequent desire to avoid trial; and (9) the settlement was worth over $50,000.00, and included (a) removal of an AGF lien securing payment of $55,454.00; (b) cancellation of the $30,-000.00 loan; (c) $12,000.00 in cash; (d) Bostic's retention of $9,000.00 in monthly mortgage payments placed in escrow during the pendency of the litigation; and (e) attorney fees and costs.

In contrast, AGF asserts: (1) Mr. Hedges unnecessarily retained co-counsel; (2) he engaged in too much discovery to support Bostic's claims; (3) despite a massive. fishing expedition regarding AGF's alleged "patterns and practices" concerning the sale of credit life insurance policies, Bostic ultimately failed to disclose any pattern and practice witnesses; (4) AGF's objections to discovery resulted in a substantial narrowing of the request; (5) an extraordinary number of hours were devoted to document review by experienced counsel, rather than junior lawyers and paralegals; (6) the parties' first round of dispositive

2. Mr. Hedges was assisted by Jean Constantine–Davis and Nina Simon, both senior litigators for the AARP Foundation.

3. Mr. Hedges asserts he has no recollection of this settlement offer. Despite AGF's protestations, the Court accepts Mr. Hedges' representation, deeming it more appropriate to characterize this as simple miscommunication between counsel than to imply either side may be guilty of prevarication. This course of action assumes, without deciding, that settlement discussions have any relevance presently, a matter itself of some controversy.

4. This contention is answered, unfortunately quite late, by Bostic's lawyers in their response to AGF's surreply. Mr. Hedges and

motions were denied without prejudice due "solely" to Bostic's lawyers' delay in identifying pattern and practice witnesses; (7) settlement was discussed early, but Bostic's unreasonable demands unnecessarily prolonged the case; (8) a January 1999 AGF settlement offer, which included cancellation of Bostic's loan, was rejected by her;[3] and (9) Bostic's settlement position changed dramatically to a more reasonable approach only when trial loomed.

Further distilling the issues, there are essentially six (6) major objections to resolve, namely that (1) the fee and cost request is unsupported by accurate and contemporaneous records;[4] (2) the requested amounts are grossly disproportionate to the results obtained; (3) a substantial amount of hours claimed were unnecessary and neither advanced Bostic's case nor contributed to settlement; (4) much time was spent by unnecessary lawyers at rates vastly exceeding the level of skill and experience required; (5) many hours were devoted to prosecuting claims lacking a fee-shifting provision and should be discounted for that reason; and (6) the supporting affidavits are deficient.

The Court addresses each objection within its discussion of the *Johnson* factors below.

## II. DISCUSSION

There are fee-shifting provisions for all of the claims alleged here.[5] *See* 15 U.S.C. § 1640(a) (TILA claim); *Eriksen Constr.*

Mr. Sugarman submitted their contemporaneous time sheets and assert Ms. Simon and Ms. Constantine–Davis have their contemporaneous records in computerized form as reflected in their affidavits. The Court accepts the latter representation, but, for purposes of the record, the computerized records should be printed, or saved in an electronic medium, and submitted to the Clerk as supporting evidence.

5. Two matters are worth noting briefly. First, there is no serious argument opposing Bostic's status as a prevailing party. Second, while this is not a civil rights case, the Court believes it appropriate to use by analogy the substantial attorney-fee jurisprudence developed in that area in resolving the dispute

*Co., Inc. v. Morey*, 923 F.Supp. 878, 880 (S.D.W.Va.1996) ("Where it can be shown by clear and convincing evidence that a defendant has engaged in fraudulent conduct which has injured a plaintiff, recovery of reasonable attorney's fees may be obtained in addition to the damages sustained as a result of the fraudulent conduct.") (fraud claim); 15 U.S.C. § 1691e(d) (ECOA claim); W.Va.Code § 46A–5–104 (WVCCA claim).

■ Not all of the shifting provisions are mandatory. The fraud fee-shifting authority requires as a prerequisite clear and convincing evidence of fraudulent conduct; the WVCCA provision is purely discretionary.[6]

■ In making an award, the Court uses the twelve factors found in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974) and since

presented here. *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir.1995).

6. AGF asserts this distinction is of great significance. It argues a substantial reduction is in order because the bulk of the work performed by Bostic's lawyers was on the fraud claim and, given there was never a finding of fraud by clear and convincing evidence, no fees should be awarded for the hours expended. Assuming AGF prevailed on its somewhat novel legal argument, namely that settlement of a fraud claim and a promise to pay reasonable fees *deprives* a plaintiff of prevailing party status, the Court believes Bostic's claims were sufficiently intertwined such that the wholesale segregation and excising of hours proposed by AGF is inappropriate:

When successful claims are unrelated to unsuccessful claims, it is not appropriate to award fees for the latter. When, however, all claims *"involve a common core of facts ... [m]uch of counsel's time will be devoted generally to the litigation as a whole,* making it difficult to divide the hours expended on a claim-by-claim basis."

*Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir.1998) (emphasis added) (quoted authority omitted); *Plyler v. Evatt*, 902 F.2d 273, 280 (4th Cir.1990) ("Certainly, where the issues presented ... in separate claims involve the same common core of facts or related legal theories, the case 'cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in rela-

adopted by our Court of Appeals. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Trimper v. City of Norfolk*, 58 F.3d 68, 74 (4th Cir.1995); *Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir.1986); *Devine v. American Ben. Corp.*, 56 F.Supp.2d 679 (S.D.W.Va. 1999).[7] The factors are used initially to calculate the reasonable hourly rate and the reasonable number of hours expended by counsel. *Trimper*, 58 F.3d at 73. The resulting product or "lodestar" fee is presumed to be fully compensatory. *Id.* at 73–74.

The rather personal nature of a lawyer's billing practices, work habits and speed in grasping the applicable substantive law make fertile ground for contentious disputes in this area. Indeed, the subject matter sometimes spawns satellite litigation far more acrimonious than the under-

tion to the hours reasonably expended on the litigation.' Ultimately, determinations of relatedness of claims and the quality of the overall results are not reached through application of any precise rules or formulae, but rather through an equitable judgment of the district court....") (quoted authority omitted).

There are a variety of other reasons the Court believes a separate deduction to be inappropriate here. For example, the fifteen (15) percent reduction *infra*, along with the other deductions, bring the fees to a very reasonable amount. To make a further reduction as AGF suggests would, in the Court's opinion, unreasonably undercompensate counsel for their very good outcome.

7. The twelve factors the Court has considered are (1) the time and labor expended; (2) the novelty and difficulty of the questions presented; (3) the skill required properly to perform the legal service; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for like cases; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases. *Trimper*, 58 F.3d at 73; *Daly*, 790 F.2d at 1075 n. 2.

lying case. Both the Supreme Court and our Court of Appeals have condemned this practice, however, and implicitly cautioned district courts to avoid encouraging the same. *Trimper*, 58 F.3d at 74 (stating " '[a] request for attorney's fees should not result in a second major litigation.' ") (quoting *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933).[8]

To assure a reasonable award, this Court "maintains a longstanding practice of closely scrutinizing fee petitions" and has observed previously "[t]he assistance of counsel in filing detailed and well-supported petitions makes the task much less cumbersome." *Continental Cas. Co. v. Assicurazioni Generali, S.P.A.*, 903 F.Supp. 990, 994 n. 10 (S.D.W.Va.1995). While minutely detailed records are not necessary, a fee request should, "at a minimum, (1) provide dates work was performed, (2) a reasonable, *specific* description of the work, and (3) time expended on the work." *Central Cab Co., Inc. v. Cline*, 972 F.Supp. 370, 374 (S.D.W.Va.1997) (emphasis added); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 180 (4th Cir.1994) ("We have frequently exhorted counsel to describe specifically the tasks performed.... Generalized billing by multiple attorneys on a large case often pro-

duces unacceptable duplication."); *West Virginians for Life, Inc. v. Smith* 952 F.Supp. 342, 345 (S.D.W.Va.1996) ("The fee applicant bears the burden of producing detailed time sheets sufficient to justify the amount of hours he claims to have expended."). Where sufficient supporting information for the fee request is lacking, "the Court [is] well within its discretion to either reduce or strike a portion of the hours expended as a result...." *Continental*, 903 F.Supp. at 994 n. 10.; 2 Mary F. Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* ¶ 16.01 (1999) ("The practitioner must be aware that a court may disallow fees for substantial portions of time due to failure to keep adequate time records[.]") [9]

While all applicable factors have been considered, the Court believes several are worthy of extended discussion.

## A. The Time and Labor Expended and the Novelty and Difficulty of the Issues

First, contrary to AGF's protestations, the parties' dispositive motions and discovery disputes belie the assertion this case was simple. Consequently, a sizable portion of the labor expended is compensable.[10]

8. The instant case is illustrative. The initial briefing was very contentious, and both sides sought to file post-reply submissions. The Court granted the request reluctantly, and only because the initial briefing left several critical, contested issues in limbo. In the future, counsel should (1) address the *Johnson* factors in a memorandum supporting their initial petition; and (2) attach all supporting materials, including contemporaneous time records and affidavits supporting the requested hourly rate.

9. Despite AGF's suggestion to the contrary, the Court does not believe the fee petitions are so substantively lacking they should be disregarded *in toto*. The Court's ultimate award, however, factors in a fee reduction to account for inadequate documentation by Bostic's lawyers. Bostic's lawyers' time entries here routinely lack a specific description of the work performed. To account generally for inadequate documentation, and potential duplicative efforts in areas other than document review, which is addressed separately,

the Court makes a fifteen (15) percent reduction in the hours requested. Derfner & Wolf, *supra* ¶ 16.02[7] ("Where the records submitted by the fee movant are found to be inadequate to permit an hour-by-hour analysis of the hours claimed, the courts will generally make a percentage reduction of the hours.").

The reduction is not designed to punish counsel, but rather is necessary because the Court has insufficient information in some areas to assure itself all of the claimed hours are compensable. As the discussion *supra* discloses, the authorities commanding reasonably specific fee petitions and supporting documentation are legion.

10. AGF asserts a substantial amount of time spent working on the case was unnecessary and did not advance Bostic's case against AGF or contribute to the ultimate settlement. It points out the numerous time entries for document review, over eighty (80) hours' worth, resulted from Bostic's asserted "fishing expedition" for pattern and practice evi-

Second, AGF's complaint Mr. Hedges overstaffed the case also lacks merit for a variety of reasons. For example, while complaining about hours claimed by Bostic's four (4) lawyers, AGF ignores its commitment of nearly a half dozen attorneys to the dispute.[11]

Regarding the actual work performed in the case, much time was spent on briefing. Bostic's first memorandum in support of her motion to compel, while eight (8) pages in length, cites an abundance of case law and took some time to prepare. Her response to AGF's appeal of the Magistrate Judge's Order compelling production later in the case is also very thorough.

AGF next filed extensive motions for summary judgment in April 1999. Bostic's response and her own motion for partial summary judgment were even more substantial, and the briefing generally presented complex issues.[12] During the sec-

---

11. In an affidavit, Mr. Hedges states:

I needed to associate with additional qualified counsel in the case. Defendants routinely used four to five qualified counsel in this case—one in Charlotte, one in Richmond, one in Raleigh, and two in Charleston. Especially given my other cases, I could not keep up with all of them. Given the complexity of the legal issues, there was little or no work that could have been done

dence related to her fraud claim, a cause of action not supported by a mandatory fee-shifting requirement. AGF also asserts document review and other tasks should have been relegated to "junior lawyers" and paralegals. *But see West Virginians for Life,* 952 F.Supp. at 345 (making no reduction for "tables of authorities and contents for plaintiffs' briefs [that] were prepared by attorneys rather than clerical personnel[.]").

The Court has considered AGF's arguments fully and, where meritorious, believes the final award adequately accounts for them. The Court's overriding concern with the subject entries, however, is not so much (1) their alleged lack of contribution to settlement, (2) their attribution to senior attorneys; or (3) AGF's speculation the hours are largely attributable to a claim without a fee-shifting provision. While on one hand a significant amount of document review may have been required to properly prepare this case for dispositive motions and trial, the hours expended by Mr. Hedges and Ms. Constantine–Davis appear slightly excessive and, more so than any other itemized task, especially subject to scrutiny for potential overlap and duplicative effort among counsel.

The Court thus opines, with the overall goal of bringing the fees requested into a reasonable range, a further five (5) percent overall reduction in Mr. Hedges' and Ms. Constantine–Davis' requests is warranted to account for the Court's concerns regarding the document review time entries. Mr. Sugarman, Ms. Simon and the law student request only 2.5, 10 and 14.5 hours, the latter at a $40.00 rate, respectively for document review. The Court deems these amounts reasonable.

more efficiently by a paralegal or junior attorney.

It was especially important to associate with counsel experienced in consumer credit/predatory lending issues, *of whom there are none in the Charleston area.* AARP Foundation's legal staff is very qualified and knowledgeable regarding these issues.... Indeed, without their help, Ms. Bostic may have lost her house. Their role was key in dealing [with] the Truth in Lending as well as the ECOA claim. *I know of no one else in West Virginia who has any substantial knowledge of Truth in Lending and ECOA claims, and it was essential to go out-of-state to get this kind of experience.* Aff. of Daniel F. Hedges at 3 (emphasis added). Given Mr. Hedges' familiarity with this area of substantive law, the Court accepts his representation and deems his choice, and the involvement, of the AARP attorneys reasonable and justified in this case. *See Montcalm Pub. Corp. v. Commonwealth of Virginia,* 199 F.3d 168, 173 (4th Cir.1999) (" '[T]he community in which the court sits is the first place to look to in evaluating the prevailing market rate.' If a matter is so complex or specialized that 'no attorney, with the required skills, is available locally,' a court may, of course, award fees for counsel located elsewhere.") (citations omitted); *Rum Creek,* 31 F.3d at 175 ("Rates charged by attorneys in other cities ... may be considered when 'the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally,' and the party choosing the attorney from elsewhere acted reasonably in making the choice.").

12. AGF asserts Bostic's "summary judgment efforts were ... of absolutely no value to her case and had no impact on settlement." (Resp. br. at 11). The Court disagrees. Further, AGF cannot suggest Bostic should simply have left AGF's dispositive briefing unchallenged. Neither was Bostic's own motion for partial summary judgment so devoid of merit that it should never have been penned. To the contrary, it was quite thorough.

ond round of dispositive motions in July 1999, however, there appears to be some excessive billing.

For example, the following hours were devoted to Bostic's two rounds of briefing in April and July 1999 respectively by her lawyers in preparing her (1) motion for partial summary judgment; and (2) oppositions to AGF's motions for summary judgment:

| Attorney | April Round | July Round |
|---|---|---|
| Hedges | 11.4 hours | Approx. 10 hours |
| Constantine–Davis | 37.0 hours | Approx. 30 hours |
| Simon | 25.5 hours | Approx. 22 hours |
| **TOTAL** | **73.9 hours** | **Approx. 62 hours** |

■ While AGF has not argued the point, the Court independently reviewed the filings that apparently spawned the hours claimed in April and July, consistent with assuring counsel has discharged their duty to minimize expenses. *Trimper*, 58 F.3d at 76 ("[A]ttorneys are under a duty to minimize expenses."). The April and July rounds are rehashed word for word in many places. While a few new arguments are added, notably in the eighteen (18) page response to American General Home Equity's motion for summary judgment, the Court cannot conceive, especially given counsel's professed substantial, specialized experience in this area, how an additional sixty-two (62) hours were reasonably required on the July Round.

Based upon its review of this factor, in addition to its other deductions, the Court deems it necessary to eliminate the following hours relating to briefing of the July round to assure the reasonableness of the request: (1) Mr. Hedges—eight (8) hours; (2) Ms. Constantine–Davis—twenty (20) hours; and (3) Ms. Simon—eighteen (18) hours, leaving sixteen (16) additional hours as reasonable and necessary beyond the April round.

### B. The Amount in Controversy and The Results Obtained

■ The Court notes this factor is entitled to significant weight. *Brodziak v.*

*Runyon*, 145 F.3d 194, 196 (4th Cir.1998); *Devine v. American Ben. Corp.*, 56 F.Supp.2d 679, 686 (S.D.W.Va.1999) ("The eighth factor is of paramount importance[.]"). It is also the subject of intense disagreement between the parties.

From Bostic's perspective, "Plaintiffs' Excellent Results Preclude Any Downward Adjustment in Fees." (Reply br. at 10). AGF, however, counters "[d]espite her initial claims that the action was worth over $100,000.00 and that punitive damages were an integral aspect of her case ... the case settled for nuisance value and involved no admission of liability, nor any proof of any conduct that would warrant a significant fee award." (Resp. br. at 8).

Despite AGF's characterization, the Court finds and concludes Bostic's lawyers engineered a significant recovery on her behalf. It is difficult to conclude otherwise when the entire package is considered. First, Bostic received an outright payment of $12,000.00. Second, her outstanding indebtedness of $30,000.00 was *canceled* and AGF's lien released. Third, the escrowed $9,000.00 in payments she made on the loan *pendente lite* was returned to her. Fourth, AGF agreed to negotiate in good faith the issue of attorney fees, an amount it had to have known would be in the five-figure range. In sum, the value of the settlement is extraordinarily compensable, given AGF's concession it "typically did not pay more than several thousand dollars to settle cases of this nature." (Resp. at 4). AGF further suggests elsewhere in its briefing that cancellation as a part of an overall settlement "was a substantial concession" on its part. (Resp. at 8).

In short, it is untenable to suggest this case settled for "nuisance value" when Bostic in actuality walked away from the litigation with what amounts to a recovery in excess of $50,000.00. From the Court's perspective, considering what was in controversy and what Bostic's lawyers obtained ultimately, they achieved a very good result.[13]

---

**13.** As noted, AGF asserts throughout much of the case, and despite the ultimate figure agreed upon, Bostic unreasonably demanded

payment of $100,000.00, plus loan cancellation and fees. Assuming again counsels' set-

## C. The Experience, Reputation, and Ability of the Lawyers

Mr. Hedges has practiced before this Court many times over the years and several times in relation to unfair-lending-practice claims. He is currently Vice Chairman of the Litigation Subcommittee of the Consumer Financial Services Committee of the American Bar Association (ABA). He is well-respected by members of both the plaintiff and defense bars in the State. He has performed well in numerous high-interest cases in state and federal court. As his affidavit demonstrates, he (1) has been a member of the bar for nearly three decades; and (2) has participated in approximately 300 to 500 cases in federal courts throughout the state.

Likewise, no one has questioned the impressive qualifications and professional standing of either Ms. Constantine–Davis or Ms. Simon. Both are senior litigators at the AARP Foundation. They have nearly forty (40) years of combined legal experience. Most importantly, they specialize in litigating actions arising from allegedly deceptive mortgage practices, also including TILA and ECOA litigation. They are Fellows on the ABA Consumer Financial Services Committee and have trained other attorneys on the use of TILA remedies and defenses, the Real Estate Settlement Procedures Act (RESPA) and state laws designed to defend clients with lender-related litigation.

Finally, Mr. Sugarman works with Mr. Hedges at a public interest law firm known as Mountain State Justice, Incorporated in Charleston. He has years of experience in public-interest litigation, and, as well, notably achieved during his law school tenure. At law school, he performed over seven hundred fifty (750) hours of clinical representation for low-income clients. He thus represented clients on a supervised and permissible basis before being licensed to practice.

■ Having reviewed generally the lawyers' qualifications, the Court now turns to their requested hourly rates. Mr. Hedges seeks $225.00 per hour and Ms. Constantine–Davis and Ms. Simon claim entitlement to $250.00 per hour respectively. Mr. Sugarman seeks $175.00 per hour. In support of this award, Mr. Hedges attaches, *inter alia*, (1) an affidavit from Charleston lawyer Benjamin Bailey[14]; and (2) a recent opinion from the Honorable Robert C. Chambers allowing Mr. Hedges and Mr. Sugarman the rates requested here. Based on this independent support, the lawyers' own affidavits and the Court's general familiarity with the hourly rates in this legal community, the rates requested by Mr. Hedges and Mr. Sugarman are reasonable.[15]

---

tlement discussions are relevant, the Court has considered fully this assertion. In sum, it is of little moment Bostic did not receive her initial, high-end demand. As with most civil litigation, that eventuality is quite rare. Opening demands often bear little resemblance to ultimate awards for a variety of factors ranging from strength of the case on the merits to a client's willingness to endure the rigors and uncertainty of trial. Despite AGF's invitation, the Court believes it more appropriate to focus attention on the very positive result Bostic ultimately obtained.

Also, as discussed *supra*, AGF claims repeatedly throughout its briefing opposing counsel engaged in an unnecessarily large amount of discovery devoted to a " 'fishing expedition.' " (Resp. br. at 3). One lawyer's fishing expedition is another's due diligence designed to pursue all reasonable leads in support of the claims advanced. The Court cannot conclude Bostic's discovery efforts were so patently overreaching or unnecessary as to constitute a fishing expedition. In any event, the Court's reductions elsewhere in the total fees requested account for any unnecessary or duplicative work in the discovery phase.

14. Mr. Bailey's affidavit states "That for litigation involving financial institutions and lending practices at my level of experience of 19 years, my hourly rate is $225 per hour." Aff. of Benjamin Bailey ¶ 2. This, in combination with the lawyers' own affidavits, is quite helpful in determining a reasonable hourly rate. *Rum Creek,* 31 F.3d at 175.

15. *See Rum Creek,* 31 F.3d at 179 (noting in the early to mid–1990s "Rum Creek Coal makes a *persuasive argument* that the fees actually charged by its law firm in Charleston, predominantly *in the range of $120 to $200 per hour,* and paid by clients there should be

Likewise, given their specialized experience and exceptional qualifications, the $250.00 rates requested by Ms. Simon and Ms. Constantine–Davis, while perhaps at the higher end of the range for this legal community, are nonetheless reasonable. Accordingly, the Court finds the requested hourly rates reasonable and necessary based on this and other factors considered.[16]

### D. The Skill Required Properly to Perform the Legal Service and the "Undesirability" of the Case

Given (1) the somewhat complicated and specialized body of substantive law; (2) the uncertain and potentially limited recovery available; and (3) AGF's admitted posture of small settlements in cases of this nature, most lawyers would have been discouraged from pursuing Bostic's case. In sum, it is practically inconceivable Ms. Bostic could duplicate elsewhere her present lawyers' intimate familiarity with the governing substantive law or their aggressive pursuit of her case. Accordingly, these factors weigh in favor of a substantial award.

### E. Whether the Fee Is Fixed or Contingent

The Court has no information to suggest the existence of a contingent fee agreement between Bostic and Mountain State Justice or the AARP.[17] For now, the Court assumes attorney Hedges and his co-counsel would have walked away without remuneration.

### 6. Fees and Costs Award

Based on the foregoing, and after considering all applicable factors and the disputed legal and factual issues, the Court **AWARDS** the following to each attorney:

#### I. Mr. Hedges

- Total Hours Requested ........ 171.80
- Deductions by Court
  - 20% global reduction ........ (34.36)
  - Deletion of 8 hours for summary judgment briefing ........ (8.00)
- Total Hours Compensated ........ 129.44

**TOTAL AWARD (129.44 × $225.00)** ........ **$29,124.90**

#### II. Ms. Constantine–Davis

strong evidence of the prevailing market rate.").

16. Mr. Hedges also seeks time expended by an unnamed law student for twenty-four (24) hours at a rate of $50.00 per hour. Ideally, the student should have filed an affidavit. In his supervisory capacity over a non-lawyer, however, and given the contemporaneous time sheets filled out by the student, the Court will compensate the hours requested, subject to the fifteen (15) percent global percentage deduction discussed *supra*. Absent the law student working the hours expended, Mr. Hedges most likely would have performed the work tasks at his higher hourly rate, about which AGF has complained bitterly throughout. Accordingly, it is appropriate to compensate the student hours. 2 Derfner & Wolf, *supra* ¶ 16.02[2][g] ("The Courts ... have

lauded the use of paralegals and law clerks, as cutting down on the expense of litigation, and have sought to promote their use.").

The rate of compensation, however, is another matter. Mr. Hedges has provided little, if any, support for the requested rate of $50.00. To assure a reasonable recovery for the hours expended, consistent with the governing rates in this legal community, the Court will compensate the hours expended at a rate of $40.00.

17. If the Court is misinformed, attorney Hedges should disclose the agreement forthwith so the Court can make any necessary adjustments in the fee award. *Lack v. Wal-Mart Stores, Inc.*, 56 F.Supp.2d 674, 678 n. 4 (S.D.W.Va.1999); *Jenkins v. McCoy*, 882 F.Supp. 549, 553 (S.D.W.Va.1995).

- Total Hours Requested . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    171.63
- Deductions by Court
  - 20% global reduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    (34.33)
  - Deletion of hours for summary judgment briefing . . . . . . . . . . . . .    (20.00)
- Total Hours Compensated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    117.30

  **TOTAL AWARD (117.30 × $250.00)** . . . . . . . . . . . . . . . . . . . . . . . . . .    **$29,325.00**

### III.  Ms. Simon

- Total Hours Requested [18] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    57.00
- Deductions by Court
  - 15% global reduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    (8.55)
  - Deletion of hours for summary judgment briefing . . . . . . . . . . . . .    (18.00)
- Total Hours Compensated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    30.45

  **TOTAL AWARD (30.45 × $250.00)** . . . . . . . . . . . . . . . . . . . . . . . . . .    **$7,612.50**

### IV.  Mr. Sugarman

- Total Hours Requested . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17.50
- Deductions by Court
  - 15% global reduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    (2.63)
- Total Hours Compensated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14.87

  **TOTAL AWARD (14.87 × $175.00)** . . . . . . . . . . . . . . . . . . . . . . . . . .    **$2,602.25**

### V.  Law Student

- Total Hours Requested . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24.00
- Deductions by Court
  - 15% global reduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    (3.60)
- Total Hours Compensated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20.40

  **TOTAL AWARD (20.40 × $40.00)** . . . . . . . . . . . . . . . . . . . . . . . . . .    **$816.00**

### VI.  Hours Expended Preparing Fee Materials

  **TOTAL AWARD (11.6 × $225.00)**
  **+ ( 2.0 × $250.00)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **$3,110.00** [19]

---

### III. CONCLUSION

Based upon the foregoing, the Court AWARDS Bostic's lawyers a total of $72,589.75 in fees and $6,930.65 in costs.[20]

18. The time entries listed for Ms. Simon in the petition in actuality amount to 57.5 hours. Lacking an awareness of whether the understatement was a mere math error or a prior reduction by counsel not reflected in the final petition, the Court leaves the half hour uncompensated.

19. Mr. Hedges has requested these 11.6 hours for preparing the fee petition and reply. He also states in his reply Ms. Simon and Ms. Constantine–Davis have expended six (6) hours on the fee issue. The Court deems Mr. Hedges' request appropriate and reasonable and will compensate him for the 11.6 hours expended. Neither Ms. Constantine–Davis nor Ms. Simon, however, have filed affidavits explaining the nature of the hours they contributed to this effort nor the need for their involvement on the issue. Accordingly, the Court will compensate them for one hour each, to account for the preparation of their time records and affidavit in support of the main award.

20. The details of the cost award are attached in Appendix A to this Memorandum Opinion and Order.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

## APPENDIX A

This is a summary of the expenses awarded by the Court based upon the supporting documents attached, inexplicably late, to Bostic's response to AGF's surreply. The Court did not locate verification for the investigator expense or the filing fee[1] expense claimed in an earlier affidavit. The Court will consider awarding expenses for these items only if timely provided appropriate documentation for them.

The Court has otherwise endeavored to divine the proper amount of expenses based on the mass of uncategorized records submitted. The Court, however, makes no award based on the supporting documents following the October 21, 1998 check to Federal Express. The subject documents are travel related, but, without an accompanying explanation, the Court is unable to make a reasoned determination as to compensability. *Trimper v. City of Norfolk,* 58 F.3d 68, 77 (4th Cir.1995) ("[T]he law is clear that no litigation costs should be awarded in the absence of adequate documentation[.]"). Ms. Simon and Ms. Constantine Davis may file explanation and a supporting statement no later than nine (9) days from the entry of the attached Memorandum Opinion, if counsel do not abandon the claim or are unable to resolve the matter amicably.

| | |
|---|---:|
| Expert Fee for Birny–Birnbaum | |
| Court Reporting Costs | $5,000.00 |
| | 93.00 |
| | 85.80 |
| | 1,279.75 [2] |
| Copy Charges | |
| | 12.60 |
| | 137.50 |
| Federal Express Charges | |
| | 119.00 [3] |
| | 54.25 |
| | 16.25 |
| | 21.25 |
| | 32.50 |
| | 11.75 |
| | 16.00 |
| | 18.00 |
| | 15.00 |
| | 18.00 |
| **TOTAL EXPENSES AWARDED** | **$6,930.65** |

The Court also notes there may be alternative mathematical methods for calculating the fee for each lawyer *supra*. To forestall any potential confusion on counsels' part, the Court's method was chosen purposely and results in the bottom-line award the Court believes reasonable.

1. The Court is perplexed by the filing-fee-reimbursement request. Bostic was permitted to proceed *in forma pauperis* by Order entered March 9, 1998. Pursuant to that Order, Bostic agreed any recovery would "be paid into the hands of the Clerk of the Court, who [would] pay therefrom all unpaid costs taxed against [her] and remit the balance to" her or her attorney. IFP Applic. and Order (S.D.W.Va. Mar. 9, 1998). Unless the fee and unpaid costs have been paid already, Bostic and her lawyers should see to their payment forthwith.

2. A check was drawn to the court reporter for $1,482.90, but the supporting invoice is in the lower amount used by the Court.

3. There are duplicate checks in Bostic's filings from this single shipment. The Court has thus compensated only one of the amounts requested. The Court has done its best to construct reimbursable amounts for the Federal Express records, despite their duplicative nature. In the future, counsel should more accurately document and detail claimed expenses.