CONTINENTAL INSURANCE COMPANY, Appellant/Cross-Respondent, *v.* PENNY MURPHY and PATRICK MURPHY, Respondents/Cross-Appellants.

No. 40472

September 2, 2004

96 P.3d 747

*Perry & Spann* and *Linda J. Linton,* Reno, for Appellant/Cross-Respondent.

*Neil G. Galatz & Associates* and *Neil G. Galatz,* Las Vegas, for Respondents/Cross-Appellants.

Before Rose, Maupin and Douglas, JJ.

## OPINION

By the Court, MAUPIN, J.:

Automobile liability insurance policies issued for delivery in Nevada must, subject to narrowly defined exceptions, provide uninsured (UM) and underinsured (UIM) motorist protection to any person insured under the policy.[1] UM/UIM insurance provides for the payment of first-party benefits based upon tort damages sustained in motor vehicle accidents involving uninsured or underinsured motorists.[2] Absent a written waiver of UM/UIM coverage, the insurer must provide minimum UM/UIM coverage limits in the amount of $15,000 per person injured or killed in a single accident, and $30,000 total for two or more persons injured or killed in a single accident. We have traditionally held that UM/UIM insurance follows the insured regardless of whether the accident involved the vehicle designated in the policy.[3] We have also held that a restriction in such coverage is void as against public policy to the extent the restriction affects the basic mandatory minimum limits mentioned above.[4] In this appeal, we revisit the question of whether, and the extent to which, an automobile liability insurer may restrict UM/UIM coverage based upon the insured's non-occupancy of a covered vehicle.

### FACTS AND PROCEDURAL HISTORY

Continental Insurance Company issued a "Classic Automobile Policy" to Patrick and Penny Murphy in connection with the ownership and operation of their 1969 Plymouth Roadrunner. The insurance agreement provided third-party liability and UM/UIM coverages,[5] each with single limits of $300,000 "per accident." The

---

[1]Motor vehicle policies issued to the State and its political subdivisions are exempt from this requirement. Also, the insured in all other policies may elect to reject UM/UIM coverage in writing. *See* NRS 690B.020(1); NRS 687B.145(2).

[2]Underinsured motorist protection

> enables the insured to recover up to the limits of his own coverage any amount of damages for bodily injury from his insurer which he is legally entitled to recover from the owner or operator of the other vehicle to the extent that those damages exceed the limits of the coverage for bodily injury carried by that owner or operator.

NRS 687B.145(2).

[3]*State Farm Mut. Auto. Ins. v. Hinkel,* 87 Nev. 478, 488 P.2d 1151 (1971).

[4]*Zobrist v. Farmers Ins. Exchange,* 103 Nev. 104, 734 P.2d 699 (1987).

[5]Because Mr. and Mrs. Murphy are Nevada residents and listed as such in the insurance agreement, the mandatory provisions of the Nevada Insurance Code governed the issuance of the policy. Under NRS 687B.145(2), UM cov-

classic car coverage was less expensive than that written for ordinary vehicles based upon restricted use on an annual basis.

Penny Murphy was seriously injured during the policy term while riding a motorcycle owned by a third party. As a result, Mr. and Mrs. Murphy submitted a claim for UIM benefits. Continental opted to contest the claim based upon exclusionary language in the policy precluding the payment of UM/UIM benefits to any insured in connection with bodily injuries sustained while occupying any vehicle other than the "covered auto" (the "non-occupancy" exclusion).[6]

Continental filed a complaint for declaratory and injunctive relief, requesting a determination that the policy language unambiguously and completely excluded UM/UIM coverage for injuries sustained while occupying any vehicle other than the 1969 Plymouth Roadrunner. In the alternative, Continental requested a declaration of non-coverage to the extent that the claims exceeded statutory minimum required coverage limits of $15,000 per person injured or killed in a single accident. Mr. and Mrs. Murphy countered that the exclusion was void in its entirety as against public policy.

The district court ultimately entered summary judgment, granting partial relief to both sides of this controversy. Although the district court determined that the policy unambiguously limited UIM coverage to the designated vehicle, it found the exclusion void to the extent it sought to preclude payment of statutorily mandated minimum coverage limits. Consequently, the district court enforced the provision as to the portion of the limits issued in excess of the minimum required coverage. This ruling followed our traditional approach applied in *Hinkel* and *Zobrist*. Continental appeals and Mr. and Mrs. Murphy cross-appeal.[7]

## DISCUSSION

"[S]ummary judgment is appropriate only where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law."[8] We conduct a de novo review of summary judgment orders.[9]

---

erage must include UIM protection. Thus, although the Continental policy did not explicitly provide UIM coverage, the policy will be construed to conform with NRS 687B.145(2).

[6]Exclusion B(4) of the policy reads as follows:

We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

. . . .

4. While "occupying" any vehicle other than "your covered auto."

[7]The district court certified the declaratory judgment as final under NRCP 54(b).

[8]*Nelson v. CSAA,* 114 Nev. 345, 347, 956 P.2d 803, 805 (1998).

[9]*Id.*

Continental contends that the district court erred in voiding the non-occupancy coverage exclusion in its entirety. It justifies the restriction in coverage, including the exclusion of minimum statutory benefits, based upon substantially reduced premiums charged for classic car coverage. Mr. and Mrs. Murphy respond that, as the insured parties under the policy, they are entitled to recover UIM coverage benefits up to the declared limits of their UM/UIM coverage. They base this argument upon the language of NRS 690B.020 and NRS 687B.145, as well as our case decisions stressing the strong public policy behind these mandated coverages, to wit: protection of persons insured against losses sustained at the hands of uninsured and underinsured motorists. More particularly, Mr. and Mrs. Murphy claim that UIM coverage follows the insured as a matter of law, regardless of the vehicle involved in an accident, and thus, that purchase of coverage with specifically defined monetary limits should not be subject to limitation clauses taking away or restricting the coverage explicitly purchased by the insured.

We note as a threshold matter that the parties contest whether the policy in question is an ''owner's'' or ''operator's'' policy under NRS 485.3091.[10] Continental claims that the policy is an ''owner's policy'' and, consequently, solely covers accidents involving the insured vehicle. An operator's policy, in contrast to an owner's policy, covers the insured in connection with the use of any vehicle. We need not decide this issue as NRS 485.3091 applies exclusively to liability insurance, not UM/UIM coverage.

This matter must be resolved under Nevada's UM/UIM statutory scheme set forth in NRS 690B.020 and NRS 687B.145(2), and our decisions concerning these coverages. NRS 690B.020 provides:

> 1. . . . [N]o policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle may be delivered or issued for delivery in this state unless

---

[10]NRS 485.3091 states in relevant part:

1. An owner's policy of liability insurance must:

(a) Designate by explicit description . . . all motor vehicles with respect to which coverage is thereby to be granted; and

(b) Insure the person named . . . using any such motor vehicle . . . against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle . . . .

. . . .

2. An operator's policy of liability insurance must insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle . . . .

coverage is provided . . . for the protection of persons insured thereunder who are legally entitled to recover damages, from owners or operators of uninsured . . . motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance or use of the uninsured . . . motor vehicle. . . . The coverage required in this section may be referred to as ''uninsured vehicle coverage.''

2. The amount of coverage to be provided must be not less than the minimum limits for liability insurance for bodily injury provided for under chapter 485 of NRS,[11] but may be in an amount not to exceed the coverage for bodily injury purchased by the policyholder.

And NRS 687B.145(2) provides:

[I]nsurance companies transacting motor vehicle insurance in this state must offer . . . uninsured and underinsured vehicle coverage in an amount equal to the limits of coverage for bodily injury . . . . Uninsured and underinsured vehicle coverage must include a provision which enables the insured to recover up to the limits of his own coverage any amount of damages for bodily injury from his insurer which he is legally entitled to recover from the owner or operator of the other vehicle to the extent that those damages exceed the limits of the coverage for bodily injury carried by that owner or operator.

''The expressed public policy of Nevada is that an insurance company may not issue an automobile or motor vehicle liability policy which does not protect the insured from owners or operators of uninsured [or underinsured] motor vehicles, unless the named insured rejects such coverage.''[12] Under these public policy concerns, we have previously held that certain limitations or exclusions on UM/UIM coverage are void as against public policy.

In *Hinkel,* we addressed an owned but uninsured vehicle exclusion on UM coverage, and held that ''anyone who is a 'person insured' within the meaning of the [UM] statutes may not be ex-

---

[11]See NRS 485.185, which states in pertinent part:

Every owner of a motor vehicle which is registered or required to be registered in this state shall continuously provide . . . insurance:

1. In the amount of $15,000 for bodily injury to or death of one person in any one accident; . . . .

[12]*Hinkel,* 87 Nev. at 481, 488 P.2d at 1153.

While Continental relies upon the holding in *St. Paul Mercury Insurance Co. v. Corbett,* 630 A.2d 28, 29 (Pa. Super. Ct. 1993), that coverage restrictions in limited use automobile insurance policies are enforceable, we distinguish this case as in variance with the public policy of Nevada.

cluded from coverage by provisions in the policy of insurance."[13] In *Zobrist,* we examined an owned but uninsured vehicle exclusion in the context of UM/UIM coverage, and refined *Hinkel* by holding that "an exclusionary clause is void only to the extent that it would defeat the minimum security required by statute but valid to prevent recovery in excess of the minimum."[14]

In summary, Continental asserts that our prior case decisions construing NRS 690B.020 thwart its ability to market new insurance product lines at a lower cost, and that it should be able to bargain with the insured for restricted coverage in exchange for a lower premium. Mr. and Mrs. Murphy, on the other hand, argue that they have paid for, and should receive, full coverage as stated in the declarations. Both positions would require a retreat from *Hinkel* and *Zobrist.*[15]

Our holding in *Zobrist* was designed to balance "state policy to provide minimum coverage to all persons with the reality of the need to pay a premium for insurance coverage."[16] We see no reason to depart from either *Hinkel* or *Zobrist* in the present case, both cases having construed clear statutory mandates. While the stated purpose of these required coverages is to provide protection for the persons insured, this mandate is restricted to the minimum limits required per NRS 690B.020(2). Considerations in the modern context, such as mechanisms to reduce premiums for certain lines of coverage, *i.e.,* for restricted use vehicles such as classic cars, remain subject to the public policy considerations of *Hinkel* and *Zobrist,* until and unless the Legislature changes the mandate.[17] Accordingly, we decline to overturn these decisions, as the public policy arguments urged in this appeal should be addressed to the Nevada Legislature.

We therefore hold that, under *Zobrist* and NRS 690B.020, a non-occupancy exclusionary clause offends public policy to the extent the exclusion purports to preclude recovery of minimum required UM/UIM benefits.[18]

---

[13]87 Nev. at 483, 488 P.2d at 1154.

[14]103 Nev. at 106, 734 P.2d at 700.

[15]Mr. and Mrs. Murphy argue that *Zobrist* does not apply in this instance, that case having involved a vehicle owned by the insured but not covered under the policy at issue. This distinction is not elaborated upon and provides no basis for a departure from *Zobrist.*

[16]103 Nev. at 106, 734 P.2d at 700.

[17]Absent legislative intervention, non-occupancy restrictions may only be achieved through the use of a prominently displayed and separately executed waiver.

[18]*See also Estate of Neal v. Farmers Ins. Exch.,* 93 Nev. 348, 566 P.2d 81 (1977) (voiding household exclusion to extent of mandatory minimum coverages).

## CONCLUSION

Mr. and Mrs. Murphy are ''persons insured'' under the Continental ''classic automobile policy.'' Thus, the non-occupancy exclusion is void under NRS 690B.020, but only to the extent that the exclusion negates the minimum required coverage limits. Accordingly, we affirm the district court's declaratory judgment.[19]

ROSE and DOUGLAS, JJ., concur.

---

[19]Continental further asserts on appeal that this court should remand for the Murphys to present evidence of damages. Since Continental only sought declaratory relief, a hearing on damages is not required.