**130 Nev., Advance Opinion 20**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

DAHLIA WINGCO, INDIVIDUALLY;
AND MARGARET WERNING,
INDIVIDUALLY, AND ON BEHALF OF
OTHERS SIMILARLY SITUATED,
Appellants,
vs.
GOVERNMENT EMPLOYEES
INSURANCE COMPANY; GEICO
GENERAL INSURANCE COMPANY;
GEICO INDEMNITY COMPANY; AND
GEICO CASUALTY COMPANY,
Respondents.

No. 59290

FILED

MAR 27 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order dismissing an insurance action. Eighth Judicial District Court, Clark County; Elissa F. Cadish, Judge.

*Affirmed.*

Cottle Law Firm and Robert Cottle, Las Vegas; Jesse Sbaih & Associates, Ltd., and Jesse M. Sbaih and Ines Olevic-Saleh, Henderson,
for Appellants.

Snell & Wilmer, LLP, and Richard C. Gordon, Brian R. Reeve, and Kelly H. Dove, Las Vegas,
for Respondents.

BEFORE THE COURT EN BANC.

14-09687

*OPINION*

By the Court, PICKERING, J.:

In this appeal, we consider NRS 687B.145(3), which provides that a motor vehicle insurer must offer its insured the option of purchasing medical payment coverage. Appellants argue that the offer is not valid unless the insurer obtains from its insured a written rejection of medical payment coverage; otherwise, the insurer must pay its insured $1,000, which is the minimum amount that the insurer must offer. We disagree and affirm the district court's order of dismissal.

## I.

Appellants Dahlia Wingco and Margaret Werning (together, Wingco) were injured in automobile accidents. Both were insured by respondent Geico,[1] and when Geico denied coverage of their medical expenses, both requested that Geico either present them with signed written rejections of medical payment coverage or tender $1,000 in medical benefits; Geico refused their requests. They thereafter instituted this class action on behalf of themselves and others similarly situated, seeking compensatory and punitive damages.

The core allegation in Wingco's complaint is that Geico violated NRS 687B.145(3) because, while the insurer may have offered medical payment coverage to its insureds, it did not obtain written rejections from them of the offered coverage. Based on this allegation, the

---

[1]We refer to respondents Government Employees Insurance Company, Geico General Insurance Company, Geico Indemnity Company, and Geico Casualty Company collectively as Geico.

Supreme Court
OF
Nevada

(O) 1947A

complaint asserts claims for breach of contract, tortious breach of contract, breach of the implied covenant of good faith and fair dealing, unfair claims practices, violation of Nevada's Deceptive Trade Practices Act, reformation, unjust enrichment, and declaratory relief.

Geico moved to dismiss, and Wingco filed a cross-motion for summary judgment. The parties joined issue on whether NRS 687B.145(3) requires a written rejection of medical payment coverage. The district court granted Geico's motion to dismiss and denied Wingco's motion for summary judgment.[2] Wingco appeals.

## II.

## A.

This case presents an issue of statutory interpretation, a pure question of law, and thus this court's review is de novo. *Las Vegas Metro.*

---

[2]The district court dismissed based on Geico's alternative argument that, under *Allstate Insurance Co. v. Thorpe*, 123 Nev. 565, 170 P.3d 989 (2007), Wingco did not have a private right of action and/or that primary jurisdiction over the dispute lay with the Nevada Department of Insurance. This conclusion does not necessarily follow from *Thorpe*, *cf. Jonathan Neil & Associates, Inc. v. Jones*, 94 P.3d 1055, 1063-65 (Cal. 2004) (outlining three different strands of the agency exhaustion doctrine and the implications of each, as well as the separate primary jurisdiction doctrine), and the briefing on appeal does not adequately analyze the complex agency exhaustion and primary jurisdiction issues involved. We therefore resolve this appeal on the statutory interpretation issue presented, as we have in other similar appeals. *See Cont'l Ins. Co. v. Murphy*, 120 Nev. 506, 509-11, 96 P.3d 747, 750-51 (2004) (upholding declaratory judgment on issue of coverages mandated by NRS 687B.145(2) and NRS 690B.020); *see also Washoe Cnty. v. Otto*, 128 Nev. ___, ___, 282 P.3d 719, 727 (2012) (this court may affirm the district court if it reached the proper result, albeit on alternative grounds).

*Police Dep't v. Yeghiazarian*, 129 Nev. ___, ___, 312 P.3d 503, 508-09 (2013). Unless ambiguous, the statutory text controls. *In re Nilsson*, 129 Nev. ___, ___, 315 P.3d 966, 968 (2013).

B.

NRS 687B.145(3) is a "must offer" statute. Its reads in full as follows:

> *An insurance company transacting motor vehicle insurance in this State **must offer** an insured under a policy covering the use of a passenger car, the option of purchasing coverage in an amount of at least $1,000 for the payment of reasonable and necessary medical expenses resulting from an accident.* The offer must be made on a form approved by the [Insurance] Commissioner. The insurer is not required to reoffer the coverage to the insured in any replacement, reinstatement, substitute or amended policy, but the insured may purchase the coverage by requesting it in writing from the insurer. Each renewal must include a copy of the form offering such coverage.

(Emphasis added.)

By its terms, NRS 687B.145(3) requires Nevada motor vehicle insurers to offer insureds the option of purchasing medical payment or "medpay" coverage in the amount of at least $1,000. But the statute does not state that the insurer must obtain a written rejection of this coverage. For Wingco to prevail, this court would have to read a written rejection requirement into NRS 687B.145(3) that it does not expressly include. *But see Williams v. United Parcel Servs.*, 129 Nev. ___, ___, 302 P.3d 1144, 1148 (2013) (this court "cannot expand or modify . . . statutory language" to impose requirements the Legislature did not).

Wingco directs us to NRS 687B.145(2) which, using language similar to that in NRS 687B.145(3), provides that a Nevada motor vehicle insurer "must offer . . . uninsured and underinsured vehicle coverage in an amount equal to the limits of coverage for bodily injury sold to an insured under a policy of insurance covering the use of a passenger car." Citing *Continental Insurance Co. v. Murphy*, 120 Nev. 506, 507, 96 P.3d 747, 748 (2004), Wingco argues that, in *Continental*, this court read an implied written rejection requirement into NRS 687B.145(2) and that we should read NRS 687B.145(3) the same way. But the written rejection requirement referenced in *Continental* originates in NRS 690B.020, not NRS 687B.145, and is express, not implied. In this regard, NRS 690B.020 requires that UM/UIM coverage "must be" provided in an amount "not less than the minimum limits for liability insurance for bodily injury provided for under chapter 485 of NRS" in Nevada motor vehicle insurance policies, NRS 690B.020(2), except "*where rejected in writing*, on a form furnished by the insurer describing the coverage being rejected, *by an insured* named therein," NRS 690B.020(1) (emphasis added). The "minimum limits . . . provided for under chapter 485," are $15,000 for bodily injury or death of "one person in any one accident." NRS 485.185(1). The third-party liability and UM/UIM coverage provided by the *Continental* policy carried limits of $300,000, yet the court invalidated the nonoccupancy exclusion only to the extent of the $15,000 statutory minimum. *Continental*, 120 Nev. at 512, 96 P.3d at 751. In invalidating the exclusion at issue only to the extent of the statutory minimum coverage of $15,000— for which NRS 690B.020(1) and (2) require a written rejection, signed by the insured—the court relied on NRS 690B.020, not the broader "must offer" provision in NRS 687B.145(2). *Id.* Thus, *Continental* supports the

proposition that this court should not imply a written rejection requirement into NRS 687B.145(3), since it did not do so as to NRS 687B.145(2), relying instead on the more limited coverage for which NRS 690B.020 expressly imposes a written rejection requirement.

Wingco next directs us to legislative history, specifically, committee minutes suggesting that an early draft of the bill that became NRS 687B.145(3) required motor vehicle insurers to offer medical payment coverage "or obtain a rejection in writing." Hearing on A.B. 405 Before the Assembly Commerce Comm., 65th Leg. (Nev., March 29, 1989); *see also* A.B. 405, 65th Leg. (Nev. 1989) (providing that every motor vehicle insurance policy "shall be deemed to provide [medpay coverage] unless the policyholder waives, in writing, inclusion of such coverage"). Normally, this court doesn't consult legislative history except to disambiguate unclear text. *Williams*, 129 Nev. at ___, 302 P.3d at 1147. But the fact that an early bill draft included a written rejection requirement that the enacted law deleted is unhelpful to Wingco in any event. *See* 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 48:18 (7th ed. 2007) ("Generally the rejection of an amendment indicates that the legislature does not intend the bill to include the provisions embodied in the rejected amendment."); *Natchez v. State*, 102 Nev. 247, 250-51, 721 P.2d 361, 363 (1986) (noting that when the Legislature was presented with a bill allowing ophthalmologists to employ optometrists and then deleted that provision from the bill before passing it, it demonstrated that the Legislature intended to prohibit this employment relationship).

In *Banks v. Progressive Northern Insurance Co.*, No. 2:12-CV-00861-KJD-VCF, 2012 WL 6697542 (D. Nev. Dec. 21, 2012), the federal

district court considered and rejected the argument that NRS 687B.145(3) carries an implied written rejection requirement. Deeming NRS 687B.145(3) "unambiguous," the district court observed that, if the Legislature meant to impose a written rejection requirement on medpay coverage offers, it would have expressly so stated, as it did in NRS 690B.020 for minimum UM/UIM coverage: "UM/UIM coverage must be waived in writing because the legislature has expressly stated that it must be waived in writing, not because it is 'must offer' coverage." *Banks*, 2012 WL 6697542, at *2. This court may adopt unpublished federal district court dispositions that it finds persuasive, *Schuck v. Signature Flight Support of Nevada, Inc.*, 126 Nev. ___, ___ n.2, 245 P.3d 542, 546 n.2 (2010), and it does so here.[3]

---

[3]*Banks* also disposes of Wingco's argument that the must-offer form Geico uses, compared to those other insurers use, suggests a practice of soliciting written rejections of medpay coverage. But we do not address here preferred or best practices. Rather, the question is whether NRS 687B.145(3) statutorily requires a written rejection of medpay coverage, such that the coverage becomes a part of the policy by operation of law if not rejected in writing by the insured. *Cf. Ippolito v. Liberty Mut. Ins. Co.*, 101 Nev. 376, 378-79, 705 P.2d 134, 136 (1985) (court will read coverage mandated by statute into Nevada motor vehicle insurance policies). As *Banks* correctly concludes, courts are "not bound by the legal conclusions of insurance companies" in interpreting Nevada's insurance code. 2012 WL 6697542, at *2.

All of Wingco's claims proceed from the mistaken premise that NRS 687B.145(3) requires a written rejection of medpay coverage. Because NRS 687B.145(3) does not require a written rejection of medpay coverage, Wingco's claims fail.

We therefore affirm the district court's order of dismissal.

_____, J.
Pickering

We concur:

_____, C.J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta